WIEAND, Judge:
 

 This appeal requires that we construe the business risk exclusions which appear in general liability policies issued by the appellee insurance companies and which exclude coverage for damage to work performed by or on behalf of the insured contractor. At issue is whether there is coverage under a general liability policy issued to a general contractor who is required to make repairs to construction work because of defective work by a subcontractor. The trial court held that coverage was barred by the business risk exclusions in the policies and disallowed recovery against the liability carriers for the general contractor. The contractor appealed. After careful review, we affirm.
 

 Ryan Homes, Inc. and its affiliates (collectively Ryan) are contractors engaged in the business of building and selling homes. During the 1980s, a subcontractor installed as roof sheathing in Ryan homes plywood which had been treated with a fire retardant. Roof shingles and other roofing materials were thereafter applied over the sheathing by another subcontractor. Later, during the 1980s, Ryan learned that
 
 *345
 
 much
 
 of
 
 the treated plywood had been defective, was now deteriorating and was causing loss of structural strength which, if uncorrected, would eventually result in the collapse of many roofs. Faced with complaints by homeowners, Ryan undertook to repair the defective roofs. This required the removal of shingles and the deteriorating plywood and the installation of new plywood and shingles. In short, Ryan put new roofs on these homes.
 

 Ryan made claims against its liability insurance carriers, which had provided primary and excess coverage, for the cost of removing and replacing the roof shingles, for disposing of the trash and for administering its program of handling customer complaints. It did not make any claim for removing the deteriorated plywood and replacing it with new plywood. Each of the carriers denied coverage.
 

 Ryan then filed an action against its several carriers, naming as defendants the following: Home Indemnity Company, Ryan’s primary general liability insurance carrier from 1980 through 1990; American Insurance Company, Ryan’s excess general liability insurance carrier in 1980; Evanston Insurance Company, Ryan’s excess general liability insurance carrier in 1981; Integrity Insurance Company (now Pennsylvania Insurance Guaranty Association), Ryan’s excess general liability insurance carrier in 1982 and 1985; First State Insurance Company, Ryan’s excess general liability insurance carrier in 1983, 1984, 1986 and 1987; and City Insurance Company, Ryan’s excess general liability insurance carrier in 1988, 1989 and 1990. The defendants each filed separate motions for summary judgment based upon business risk exclusions appearing in their policies. The trial court granted summary judgment in favor of the excess liability carriers but denied it for the primary liability carrier, Home Indemnity Company. Ryan appealed. Because Ryan has since settled its disputes with Home Indemnity Company and City Insurance Company, we need only consider whether the excess general liability policies issued by American Insurance Company, Evanston Insurance Company, Integrity Insurance Company and First
 
 *346
 
 State Insurance Company exclude from coverage the claims which Ryan filed.
 

 When considering an appeal from an order granting summary judgment, we view the record and all reasonable inferences therefrom in the light most favorable to the non-moving party.
 
 Denlinger, Inc. v. Dendler,
 
 415 Pa.Super. 164, 170, 608 A.2d 1061, 1062 (1992). We will affirm such an order where the interrogatories, affidavits and depositions of record show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.
 
 Buckno v. Penn Linen & Uniform Serv., Inc.,
 
 428 Pa.Super. 563, 565-566, 631 A.2d 674, 675 (1993). Only where the right is clear and free of doubt should summary judgment be granted.
 
 Musser v. Vilsmeier Auction Co., Inc.,
 
 522 Pa. 367, 370, 562 A.2d 279, 280 (1989). Whether a loss is within an insurance policy’s coverage or barred by an exclusion is a question of law that may be decided by way of a motion for summary judgment.
 
 Solcar Equip. Leasing Corp. v. Pennsylvania Mfrs. Ass’n Ins. Co.,
 
 414 Pa.Super. 110, 120, 606 A.2d 522, 527 (1992).
 

 When interpreting an insurance contract, words that are clear and unambiguous must be given their plain and ordinary meaning.
 
 Carpenter v. Federal Ins. Co.,
 
 432 Pa.Super. 111, 117-18, 637 A.2d 1008, 1011 (1994). Where ambiguities are found, they must be construed in the light most favorable to the insured.
 
 Bateman v. Motorists Mut. Ins. Co.,
 
 527 Pa. 241, 245, 590 A.2d 281, 283 (1991). However, “a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction.”
 
 Metzger v. Clifford Realty Corp.,
 
 327 Pa.Super. 377, 386, 476 A.2d 1, 5 (1984), quoting
 
 Commonwealth State Highway & Bridge Auth. v. E.J. Albrecht Co.,
 
 59 Pa.Cmmw. 246, 251, 430 A.2d 328, 330 (1981). An ambiguity exists only when a policy provision is reasonably susceptible of more than one meaning.
 
 Musisko v. Equitable Life Assurance Soc’y,
 
 344 Pa.Super. 101, 106, 496 A.2d 28, 31 (1985). “Courts should read policy provisions to avoid ambiguities, if possible, and not torture
 
 *347
 
 language to create them.”
 
 Carpenter v. Federal Ins. Co., supra
 
 at 118, 637 A.2d at 1011-1012. Whether a policy provision is ambiguous is a question of law to be decided by the courts.
 
 Metzger v. Clifford Realty Corp., supra,
 
 327 Pa.Super. at 385, 476 A.2d at 5.
 

 At issue here are the insurance agreements between appellant and four separate excess liability carriers. Each policy, although slightly different, contains exclusionary language which denies liability coverage for damage to the insured’s product or for damage to work performed by the insured arising out of that work.
 
 [1]
 
 These exclusions, appellant urges, are ambiguous and should not operate to deny coverage under the facts of this case. Although appellant concedes that the policies do not cover the cost of repairing the damages to the work performed by the delinquent carpentry subcontractor, which installed the defective plywood, it urges that the policy should be interpreted to provide indemnity for the cost of repairing other work, i.e., the removal and replacement of the shingles and the hauling away of trash. With respect thereto, appellant argues, the language of the exclusion is ambiguous.
 

 The meaning of similar business risk exclusions has been explored by other courts, and a clear majority has found the language of such provisions to be unambiguous. See:
 
 Dodson
 
 
 *348
 

 v. St. Paul Ins. Co.,
 
 812 P.2d 372, 374-375 n. 1 & 3 (Okla.1991) and cases cited therein. See also, e.g.:
 
 U.S. Fire Ins. Co. v. Colver,
 
 600 P.2d 1 (Alaska 1979);
 
 B.A. Green Const. Co., Inc. v. Liberty Mut. Ins. Co.,
 
 213 Kan. 393, 517 P.2d 563 (1973). As the Carbon County court said in
 
 Mehlig v. Harter,
 
 12 D.
 
 &
 
 C.3d 131 (Carbon 1979),
 

 [T]he plain meaning of the language of this exclusion is simply that if the insured should become liable for property damage caused by an accident to work performed by or on behalf of the insured which accident arises out of the work or any portion thereof, the cost of replacement or repair of that work will not be covered.
 

 Id.
 
 at 134.
 

 In
 
 Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs. Ass’n Ins. Co.,
 
 512 Pa. 420, 517 A.2d 910 (1986), a dwelling which the general contractor had constructed was damaged when the land subsided upon which it was built. The subsidence, it was alleged, had occurred because the general contractor had constructed the dwelling on unstable ground. When the contractor filed a claim with its general liability insurer, coverage was denied because of policy language which excluded coverage for damages to the insured’s product or to work performed by or on behalf of the insured. The Court held that the exclusion was unambiguous, that the contractor’s product was the house, and that any damage to the house arising out of the work thereon was not covered by the policy.
 
 Id.
 
 at 427-428, 517 A.2d at 914. See also:
 
 Id.
 
 at 428-429, 517 A.2d at 914 (concurring opinion of Nix, J., reasoning that the policy was unambiguous). Accord:
 
 Standard Venetian Blind Co. v. American Empire Ins. Co.,
 
 503 Pa. 300, 305, 469 A.2d 563, 566 (1983) (finding similar “work product” and “work performed” exclusions to be unambiguous);
 
 Solcar Equip. Leasing Corp. v. Pennsylvania Mfrs. Ass’n Ins. Co., supra,
 
 414 Pa.Super. at 123, 606 A.2d at 528 (also finding work performed exclusion to be unambiguous).
 

 General liability insurance policies are intended to provide coverage where the insured’s product or work causes
 
 *349
 
 personal injury or damage to the person or property of another.
 
 Erie Indemnity Co. v. McMullen,
 
 1 D.
 
 &
 
 C.3d 562, 567 (Cumberland 1977). “Provisions of a general liability policy provide coverage [ ] if the insured work or product actively malfunctions, causing injury to an individual or damage to another’s property.”
 
 Owings v. Gifford,
 
 237 Kan. 89, 93, 697 P.2d 865, 869 (1985). Such policies are intended to protect against limited risks and are not intended to act as performance bonds.
 
 Western World Ins. Co., Inc. v. Carrington,
 
 90 N.C.App. 520, 523, 369 S.E.2d 128, 130 (1988). “A liability policy excluding damage to any goods or products made or sold by the insured or for ‘work completed by or for’ [the insured] does not insure any obligation of the policyholder to repair or replace [its] own defective work or product.” 43 Am.Jur.2d,
 
 Insurance
 
 § 719 (footnote omitted). The insured, therefore, must assume the risk of the quality of its product and its work.
 

 Regardless of the underlying cause of action against the insured, [the exclusions] eliminate coverage for property damage caused by the lack of quality or performance of the insured’s products and for any repair or replacement of the faulty work performed by or on behalf of the insured. [The exclusions] unquestionably exclude coverage for the business risk incurred by the insured. As observed by the Supreme Court of Indiana in
 
 Indiana Insurance Company v. DeZutti, 408
 
 N.E.2d 1275, 1279, note 1 (Ind.1980):
 

 What is covered by the policy is defective workmanship which. causes personal injury or property damage not excluded under some provision of the policy. So if the insured’s breach of an implied warranty results in damage to property
 
 other
 
 than the insured’s work or product which is excluded by exceptions ..., the policy would provide coverage. To hold otherwise would effectively convert the policy into a performance bond or guarantee of contractual performance and result in coverage for the repair or replacement of the insured’s own faulty workmanship.
 

 
 *350
 

 Dodson v. St. Paul Ins. Co., supra
 
 at 378 (emphasis in original).
 

 The Pennsylvania courts, it appears, have not had occasion to consider the coverage provided by a general liability policy for the cost of repairing or replacing the work of a subcontractor which has been damaged by the poor workmanship of another subcontractor. This scenario, however, was before the court in
 
 Blaylock & Brown Constr. Co., Inc. v. AIU Ins. Co.,
 
 796 S.W.2d 146 (Tenn.App.1990). Analyzing similar “work product” and “work performed” provisions, the court held that coverage had been excluded. The court considered the business risks and responsibilities generally assumed by insured-contractors as well as the relationship between contractors and subcontractors and said:
 

 [The contractor] had the responsibility for all construction work — its own as well as its subcontractors. It had “effective control” over all project work and materials, including those provided by the subcontractors. When the completed project is turned over to the owner by the general contractor, all of the work performed and materials furnished by the subcontractors merges into the general contractor’s product — a product it has contracted to complete in a good and workmanlike manner. Thereby it incurred the business risk of liability arising from its failure to fulfill that contractual obligation. Thus, whether the work was “done by” or “on behalf of’ the general contractor is irrelevant to the analysis. The completed product is to be viewed as a whole, not as a “grouping” of component parts.
 

 Id.
 
 at 154. The “work performed by the named insured,” the court said, must be interpreted to include the work of all subcontractors hired by the insured in connection with the overall project.
 

 In the instant case, the named insured is the general contractor and work performed by the insured must necessarily be such work as the named insured is required to perform under the construction contract. How the insured performs the work is a matter for its decision in the exercise of sound business practice. The contractor can
 
 *351
 
 employ subcontractors or use employees to do the work, but in the end, when the work is complete, all the work called for by the contract on the part of the contractor must be deemed to be work performed by the contractor. We hold that the language of the policy excludes liability coverage for the [contractor] for damage to the property constructed pursuant to the contract.
 

 Id.
 
 at 154.
 

 In
 
 Tucker Constr. Co. v. Michigan Mut. Ins. Co.,
 
 423 So.2d 525 (Fl.App.1982), a Florida appellate court held that a general liability policy which excluded coverage for damage to the insured’s product or to work performed by the insured excluded coverage where any portion of a project caused damage to any other portion of the same project.
 

 The words “work performed by” in this context in the policy mean the same as “the [building] constructed by” the insured and was intended to exclude coverage of the insured’s contractual liability for damages to the “work” caused by the insured’s neglect or failure to complete and deliver the completed “work” in accordance with his contractual undertaking with the property owner.
 

 Id.
 
 at 528. To hold otherwise, the court noted, would permit a contractor to receive an initial payment from the property owner, allow the project to proceed in a shoddy manner, and then to receive a subsequent payment from an insured company to correct its own mistakes or the mistakes of those it had hired.
 
 Id.
 
 at 528.
 

 A Delaware court agreed and held that damage to any part of a contractor’s project is damage to the work of the insured regardless of the fact that the work was actually performed by a subcontractor.
 
 Vari Builders, Inc. v. U.S. Fidelity & Guar. Co.,
 
 523 A.2d 549, 552 (Del.Super.1986). The court said:
 

 [Business risk] exclusions are designed to protect insurers from contractors’ attempts to recover funds to correct deficiencies caused by the contractors’ questionable performance. Their use demonstrates the insurers’ belief that the cost of not performing well is a cost of doing business and
 
 *352
 
 not considered part of the risk sharing scheme for which general liability policies are written.
 

 Id.
 
 at 551. See also:
 
 Western Casualty & Sur. Co. v. Brochu,
 
 122 Ill.App.3d 125, 77 Ill.Dec. 528, 460 N.E.2d 832 (1984),
 
 aff'd,
 
 105 Ill.2d 486, 86 Ill.Dec. 493, 475 N.E.2d 872 (1985) (damage to building not covered under clause which excluded damages to insured’s product or work of insured);
 
 Century I Joint Venture v. U.S. Fidelity & Guar. Co.,
 
 63 Md.App. 545, 493 A.2d 370 (1985),
 
 appeal denied,
 
 304 Md. 297, 498 A.2d 1183 (1985) (although developers had not performed any of the actual construction, they were responsible for all work on project and work performed by subcontractor was work of developers);
 
 Weedo v. Stone-E-Brick, Inc.,
 
 81 N.J. 233, 405 A.2d 788 (1979) (insurance policy excluded damage to any portion of contractor’s project);
 
 Zanco, Inc. v. Michigan Mut. Ins. Co.,
 
 11 Ohio.St.3d 114, 464 N.E.2d 513 (Ohio 1984) (damage to condominiums caused by negligence of suppliers was damage to developer’s product as well as damage to work performed by developer and was excluded from coverage). Contra:
 
 Fireguard Sprinkler Systs., Inc. v. Scottsdale Ins. Co.,
 
 864 F.2d 648 (9th Cir.1988) (general contractor not responsible for entire project so as to make work of subcontractor that of contractor);
 
 Harbor Ins. Co. v. Tishman Constr. Co.,
 
 218 Ill.App.3d 936, 161 Ill.Dec. 551, 578 N.E.2d 1197 (1991),
 
 appeal denied,
 
 142 Ill.2d 654, 164 Ill.Dec. 917, 584 N.E.2d 129 (1991) (insurer has duty to defend contractor where project was damaged by work of subcontractor).
 

 Appellant’s reliance on
 
 Carpenter v. Federal Ins. Co., supra,
 
 is misplaced. There, a home which the contractor had built and. to which he had transferred title to the buyer, was destroyed by a fire caused by a light fixture which had been defectively installed by a subcontractor. In the contractor’s policy of liability insurance, a clause similar to those appearing in the policies in this case had been deleted by endorsement and replaced by a clause as follows:
 

 [We do not cover] property damage to work performed by you arising out of the work or any portion of it, or out of materials, parts or equipment furnished but only with re
 
 *353
 
 spect to (a) the Completed Operations Hazard and (b) any classification stated on the Declarations as “including completed operations.”
 

 See:
 
 Id.
 
 at 123, 637 A.2d at 1014. In interpreting this clause, the Court reasoned
 

 “[T]he purpose of a work products exclusion in a commercial liability insurance policy is to distribute the risks contemplated in the production or construction of a product” so that “if the product itself is flawed because of the failure of the insured [herein the appellee builders] in the work process, the insured must repair or replace it, but if the product’s failure causes injury or damage to third parties, the insurer [herein Erie] is responsible for indemnification of the loss.” Based on this reasoning, the trial court found the facts before it presented the exact situation wherein the work products exclusion clause would not apply. If the insured contractor or any subcontractor had been required to repair or replace some part of the Costello home because of negligence in the original construction, the work product exclusion would have applied. However, because the court found the damages to the Costello home were damages to the property of third parties as contemplated in the policy coverage as a completed operation, the court ruled the work product exclusion was inapplicable and Erie was responsible to compensate the Costellos for their loss.
 

 Id.
 
 at 123, 637 A.2d at 1014.
 

 In the case sub judice, appellant has repaired and replaced a part of the homes, i.e., the roofs, which it constructed, because the workmanship was defective. Even under the holding of
 
 Carpenter,
 
 the work product exclusion would be applicable to prevent coverage for the cost of replacing the roofs. Any other interpretation would make the policy not only a general liability policy but a performance bond guaranteeing the contractor’s workmanship.
 

 Appellant undertook to construct homes and furnish the buyers with good quality residential structures. To assist it in doing so, appellant employed subcontractors to do some of the
 
 *354
 
 work. When it did so, the subcontractors were required to meet, and appellant was required to enforce, standards of good workmanship. When appellant purchased general liability coverage, language of the policy excluded coverage for a failure of the completed home to comply with the workmanship which the buyers had a right to expect under the terms of their contracts with appellant. For such liability, the trial court properly held, there was no coverage under the terms of appellant’s general liability policies of insurance.
 

 The order entering summary judgment is affirmed.
 

 [1]
 

 . The American Insurance and Integrity Insurance policies contain the following exclusions:
 

 This policy does not apply to [property damage to:]
 

 (d)(3) the named insured’s products arising out of such products or any part of such products,
 

 (4) work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.
 

 The First State policy is slightly different but contains the following exclusion:
 

 This policy shall not apply ... [to damage to] goods, products or containers thereof, manufactured, sold, handled or distributed, or work completed by or for the INSURED, out of which the OCCURRENCE arises.
 

 Finally, the Evanston policy contains language identical to exclusion (d)(3) of the American and Integrity policies and also excludes: property damage to ... work performed by the Named Insured arising out of materials, parts or equipment furnished in connection therewith.