**SNYDER HEATING COMPANY, INC.,**
**t/a Snyder Company, Inc.**

**v.**

**PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY and Wallingford Swarthmore School District.**

**Appeal of PENNSYLVANIA MANUFAC-TURERS' ASSOCIATION INSUR-ANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Nov. 25, 1997.

Filed Aug. 5, 1998.

Lewis R. Olshin, Philadelphia, for appellant.

James A. Kelly, Upper Darby, for Snyder, appellee.

Before McEWEN, President Judge, CAVANAUGH, J., CIRILLO, President Judge Emeritus, and TAMILIA, POPOVICH, JOHNSON, HUDOCK, FORD ELLIOTT and EAKIN, JJ.

CIRILLO, President Judge Emeritus:

Pennsylvania Manufacturers' Association Insurance Company ("PMA") appeals from

the order entered in the Court of Common Pleas of Delaware County denying its motion for post-trial relief.[1] We vacate and remand for judgment to be entered in favor of PMA and against Snyder Heating Company, Inc.

Appellee, Snyder Heating Company, Inc. ("Snyder"), instituted the underlying declaratory judgment action after PMA disavowed coverage for claims asserted against Snyder in a suit brought by the Wallingford–Swarthmore School District ("School District"). In January of 1991, the School District filed a complaint against Snyder alleging that it suffered property damage as a result of Snyder's breach of two contracts to provide maintenance for the School District's burners and boilers.[2] At the time the alleged damage was incurred by the School District, Snyder was insured by PMA under a commercial general liability (CGL) insurance policy.

After a non-jury trial, the trial court concluded that under the products and completed operations coverage contained within the CGL policy, PMA was obligated to pay for the School District's property damage resulting from Snyder's work or product. In its proposed findings of fact and conclusions of law, the court found that PMA had the duty to defend Snyder in the amount of $40,290.51—representing the costs Snyder incurred in defending the School District's lawsuit and in prosecuting the declaratory judgment action.[3]

After filing post-trial motions that were denied by the trial court, PMA filed a notice of appeal to this court. On appeal, PMA presents the following issues for our review:

(1) Did the trial court err as a matter of law in holding Snyder's claim was an "occurrence" under PMA's insurance policy?

(2) Did the trial court err as a matter of law in finding that a letter from Snyder's

counsel to PMA constituted competent evidence of the scope of Snyder's work and was a sufficient basis for the Court's findings of fact nos. 4 and 20?

(3) Did the trial court err as a matter of law in holding that Snyder's claim was not excluded under PMA's insurance policy?

■ "A court's first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage." *General Accident Ins. Co. of America v. Allen,* 547 Pa. 693, 706, 692 A.2d 1089, 1095 (1997) (citations omitted). The terms of an insurance policy must be compared to the nature of the allegations in the complaint in order to determine whether, if the allegations are sustained, the insurer would be obligated to incur the expense of the judgment. *Harford Mutual Insurance Company v. Moorhead,* 396 Pa.Super. 234, 238, 578 A.2d 492, 494 (1990). *See also General Accident Ins. Co. of America v. Allen,* 708 A.2d 828 (Pa.Super. 1998); Creed *v. Allstate Ins. Co.,* 365 Pa.Super. 136, 529 A.2d 10 (1987) (the duty to defend is limited to those situations where the complaint against the insured alleges facts which, if they were true, would bring the claim within the insurance policy's coverage). The nature of the claim, rather than the actual details of any injuries suffered by the insured, determines whether the insurer is required to defend. *D'Auria v. Zurich Ins. Co.,* 352 Pa.Super. 231, 507 A.2d 857 (1986).

In the present case, the CGL policy issued by PMA to Snyder provided, in pertinent part, as follows:

**1. Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance

---

1. We note that PMA filed its notice of appeal from the trial court's September 18, 1995 order denying its post-trial motions. Final judgment in this matter, however, was not entered until September 25, 1995. "A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof." Pa.R.A.P. 905(a). Hence, we will treat this appeal as lying from the judgment, as opposed to the order denying post-trial motions.

2. The complaint also sought damages in the amount of $46,936.00—representing the costs of repairing and replacing the damaged boilers.

3. The underlying action brought by the School District proceeded to arbitration and was ultimately resolved in favor of Snyder. The issue of PMA's duty to indemnify, therefore, was not an issue in the declaratory judgment action.

applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence[4]" and settle any claim or "suit" that may result.

b. This insurance applies to "bodily injury" and "property damage" only if:

1. The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

2. The "bodily injury" or "property damage" occurs during the policy period.

**2. Exclusions**

**This insurance does not apply to:**

\* \* \*

b. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

\* \* \*

j. "Property damage" to:

\* \* \*

(6) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it. Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

k. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

m. **"Property damage" to "impaired property" or property that has not been physically injured, arising out of:**

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

(2) **A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.**

In a letter written by a PMA account claims supervisor to Snyder, the insurance company acknowledged its receipt of the heating company's summons and complaint and disclaimed coverage for the underlying School District suit. The insurance representative based the disclaimer upon the fact that the allegations in Snyder's complaint involved property damage that resulted from its lack of contractual performance or its failure to meet the required level of performance represented by Snyder in its contract with the School District. Finally, PMA claimed that because the underlying allegations against Snyder did not fall within the required policy definition of an "occurrence," PMA had no duty under its insurance contract to defend Snyder in the underlying action.

After a review of applicable case law, we find that the legal principles espoused in our court's *en banc* opinion, *Redevelopment Auth. of Cambria County v. International Ins. Co.,* 454 Pa.Super. 374, 685 A.2d 581 (1996) (*en banc*), *allocatur denied*, 548 Pa. 649, 695 A.2d 787 (1997), control our resolution of the duty to defend issue presented in this appeal. In *Redevelopment*, a public redevelopment authority ("the Authority") entered into a maintenance service agreement with Barr Township ("the Township") and the Township's water system operator, Marsteller Community Water Authority ("MCWA"), whereby the Authority was to allocate certain grant expenditures and other funds and sources to projects within the Township. *Id.* at 378, 685 A.2d at 583. Pursuant to the agreement, the parties intended that the Authority manage and administer grants in order to form a renovated water system capable of efficiently providing water of a quality required by statute, and create a volume of water adequate to supply the domestic, commercial and fire protection needs of the MCWA. *Id.* When the community's water system was not upgraded in compliance with certain environmental standards, the Township and MCWA instituted suit against the Authority for breach of the maintenance agreement. *Id.*

The Township's/MCWA's complaint alleged that the Authority failed to perform under the service agreement, that the Authority was negligent in performing under

---

4. The policy defines occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

the contract, and that the Authority, which had received consideration under the agreement, was unjustly enriched. *Id.* at 380, 685 A.2d at 584. The complaint also claimed that the Authority: failed to meet requirements necessary to obtain permits; approved payment to contractors while failing to withhold payment or require correction of damages to existing systems and property; and, failed to monitor and review the method of selection of engineers which, in turn, led to faulty installation, design and sizing of water system components. *Id.* at 378, 380, 685 A.2d at 583–84.

The *Redevelopment* court determined that although the underlying allegations in the Township's complaint employed negligence concepts, the claims were indisputably "based upon duties imposed upon the [insured] solely as a result of the contract between the [insured and the plaintiff]." *Id.* at 390–91, 685 A.2d at 589. Accordingly, the court could not find that the insurer, Erie Insurance Group, was obligated to defend the Authority in the underlying suit. *Id.* at 390, 396, 685 A.2d at 589, 592. The Erie insurance policy provided that the insurer would pay for property damage that is caused by an "occurrence" that took place in the covered facility. The contract defined an occurrence as an accident, including continuous or repeated exposure to the same general, harmful conditions. Finding that the improper performance under the parties' service agreement amounted to a breach of contract, and not an accident or occurrence, the court did not hold Erie to a duty to defend. *Id.* at 390, 685 A.2d at 589.

■ In the present case, Snyder entered into two maintenance agreements with the School District in the years 1988 and 1989. The agreements stated, *inter alia*, that Snyder, acting as contractor, would deliver supplies, materials, and equipment in order to perform services upon the School District's burners and boilers. The contract also provided that payment for Snyder's services would be based upon "satisfactory completion of the work contracted for, in accordance with the General Conditions, Specifications, and Bid of the Contractor and the acceptance of the same by the Board of School Directors of the ... School District." In its complaint, the School District specifically claimed that Snyder's nonfeasance in the following areas constituted a breach of the parties' maintenance agreement:

(1) failure to seal and close the boilers

(2) failure to properly test and inspect the boilers

(3) failure to timely inspect the boilers and report noted deficiencies

(4) failure to install new hardware as needed in the boilers

(5) failure to start the boilers in accordance with specifications

(6) failure to properly clean the boilers

(7) failure to properly secure the boiler doors

(8) failure to otherwise perform its obligations

under the contracts

In the underlying declaratory judgment action, the trial court found that the School District's claims against Snyder fell within PMA's duty to defend based upon an insurance policy provision known as the "Products-completed operations hazard." According to the PMA policy, "all 'bodily injury' and 'property damage' occurring away from premises you [Snyder] own or rent and arising out of 'your [Snyder's] product' or 'your [Snyder's] work'" constitutes a "products-completed operations hazard." Such hazard is not excluded, and, therefore, is covered under the policy. On the other hand, any property damage to Snyder's work arising out of it or any part of it and included in the "products-completed operations hazard" is excluded from PMA's coverage obligation.

In finding that the PMA policy covered the claims brought by the School District against Snyder, the trial court based its determination on the fact that evidence existed to prove that the alleged damage to the School District's burners/boilers had actually occurred to the refractory materials contained in the boilers. Because Snyder was not hired to perform work on these materials, the court found that any damage suffered was not to Snyder's "work" and, therefore, should be covered under the "products-completed operations hazard." The court stated,

in its opinion, that "[b]ecause PMA admits that there is no need to determine whether Snyder was in breach of contract, the provision of exclusion (m) barring coverage in cases of breach of contract does not apply." We disagree.

■ Although counsel for PMA did state that "how you file the action is entirely irrelevant to a proper resolution in this case," PMA representatives from the inception of receiving Snyder's complaint denied coverage based upon the fact that the policy excluded coverage for breach of contract allegations.[5] Furthermore, judicial admissions are by their very nature **factual** concessions. *Jewelcor Jewelers & Distrib. Inc. v. Corr*, 373 Pa.Super. 536, 542 A.2d 72 (1988), *quoting Willis v. Kane*, 2 Grant 60, 63 (Pa.1853) ("When a man alleges a fact in a court of justice, for his advantage, he shall not be allowed to contradict it afterwards."). Because PMA's duty to defend is a legal, not factual issue, we are free to determine what, if any, policy exclusions apply to the instant case. As PMA's counsel readily conceded "[coverage] is a question of law for the Court to determine with reference solely to the complaint...." [6]

While Snyder attempts to cloak the School District's allegations in tortious principles, the claims asserted against the heating company are clearly those sounding in breach of contract. "General liability insurance policies are intended to provide coverage where the insured's product or work causes personal injury or damage to the person or property of another." *Ryan Homes, Inc. v. Home Indem. Co.*, 436 Pa.Super. 342, 348–49, 647 A.2d 939, 942 (1994) (citation omitted); *see also* 43 Am.Jur.2d, **Insurance** § 14:13. "Provisions of a general liability policy provide coverage ... if the insured work or product *actively malfunctions*, causing injury to an individual or damage to another's property." *Ryan Homes*, 436 Pa.Super. at 349, 647 A.2d at 942 (citation omitted) (emphasis added); *Redevelopment*, 454 Pa.Super. at

391, 685 A.2d at 589. These types of insurance policies involve risks that are limited in nature; they are not the equivalent of a performance bond on the part of the insurer. *Ryan Homes*, 436 Pa.Super. at 349, 647 A.2d at 942.

The nature of Snyder's alleged claims does not equate to a finding that Snyder's failure to provide adequate burner/boiler services was tortious, accidental, or non-contractual in nature (i.e., "an occurrence"). *Redevelopment, supra.* In essence, the nature of the claims contained within the School District's complaint amount to nothing more than one party claiming that another party has breached a contract. *D'Auria, supra.* To this end, the CGL policy clearly excludes from coverage breaches of contract; the policy language provides that the insurance contract will not apply to Snyder's (the insured's) failure to perform a contract or agreement in accordance with its terms. *See Phico*, 444 Pa.Super. at 228, 663 A.2d at 757 (the important difference between contract and tort actions is that the latter lie from a breach of duties imposed by law as a matter of social policy while the former lie from the breach of the duties imposed by mutual consensus agreements between particular individuals) (citing *Bash v. Bell Telephone Co.*, 411 Pa.Super. 347, 355, 601 A.2d 825, 829 (1992)).

Additionally, the School District's complaint fails to allege any *active malfunctioning* on Snyder's part, *Ryan Homes, supra*; the claims made against Snyder solely arose out of and are based on its *failure to perform* under the terms of the boiler/burner maintenance agreements. *See Toombs NJ Inc. v. Aetna Casualty & Surety Co.*, 404 Pa.Super. 471, 475–76, 591 A.2d 304, 306 (1991) (insurance company had no duty to defend in an action brought against its insured, a corporation that had entered into a joint venture with plaintiff; allegations in complaint "both in essence and upon its face, [were] one for

---

5. *See* Letters dated February 19, 1991 and April 12, 1991 from PMA account claims supervisor and executive, Antoinette L. Strunk and Joseph A. Romano, respectively.

6. We reiterate that where claims may potentially fall within the scope of coverage of an insurance

contract, a court must continue its analysis in a duty to defend case to consider the applicability of the policy's exclusions relating to the nature of the claims asserted by the insured. *Phico Ins. Co. v. Presbyterian Med. Serv.*, 444 Pa.Super. 221, 226–27, 663 A.2d 753, 756 (1995).

breach of contract" where corporation called off joint venture with plaintiff and where plaintiff alleged that he suffered damages for loss of earnings, salary, and costs for architectural designs); *accord: Phico, supra*.

PMA, therefore, has no duty to defend Snyder. *Redevelopment, supra.* We vacate the order of the trial court and direct that judgment be entered in favor of PMA. *See Phico, supra* (allegations that the insured-corporation had acted with negligence and misconduct, resulting in the breach of a management agreement with the plaintiff, were not covered under insured's comprehensive insurance policy; obligating the insurance company to defend or indemnify the insured would effectively change the insurer's status from a mere insurer to a party to the transaction); *see also Ryan Homes, supra* (insurer had no duty to defend its insured where parties' general liability policy, under work product exclusion, prevented insurer from covering replacement and repair costs for defective roofs constructed by subcontractor of insured).

Order vacated and case remanded for proceedings consistent with the directives in this opinion. Jurisdiction relinquished.[7]

POPOVICH, J., files a Dissenting Opinion which is joined by McEWEN, President Judge.

POPOVICH, Judge, dissenting:

I respectfully dissent from the opinion of the majority that Pennsylvania Manufacturers' Association Insurance Company had no obligation to defend Snyder Heating Company, Inc., in the lawsuit by Wallingford–Swarthmore School District. Upon review, I conclude that at the time PMA declined to defend Snyder, the pleadings were sufficiently vague to include the possibility that the damage to the School District's property was covered. Consequently, I submit that the lower court correctly concluded that PMA had a duty to defend Snyder against the school district's claims, at least until such time that it was clear that the School Dis-

trict's claims fell within one of the coverage exclusion in the parties' insurance policy.

Herein, I am convinced that a direct conflict between two panel decisions of this court, *Barber v. Harleysville Mut. Ins. Co.*, 304 Pa.Super. 355, 450 A.2d 718 (1982) and *Solcar v. PMA, Ins. Co.*, 414 Pa.Super. 110, 606 A.2d 522 (1991), should be resolved in Snyder's favor. After careful consideration, I conclude that our decision in *Solcar, supra*, was based upon a misinterpretation of our Supreme Court's holding in *Gene & Harvey Builders, v. PMA Ins. Co.*, 512 Pa. 420, 517 A.2d 910 (1986). Accordingly, my decision today is grounded upon our decision in *Barber, supra*. In addition, I find our recent *en banc* decision in *Redevelopment Auth. of Cambria County v. International Ins. Co.*, 454 Pa.Super. 374, 685 A.2d 581 (1996) (*en banc*), *allocatur denied*, 548 Pa. 649, 695 A.2d 787 (1997), is distinguishable.

This appeal arose from a declaratory judgment action filed by Snyder Heating Company, Inc., against its commercial general liability carrier, Pennsylvania Manufacturers' Association Insurance Company, wherein Snyder alleged that PMA breached their insurance contract by refusing to defend and indemnify Snyder in a law suit by Wallingford–Swarthmore School District against Snyder. In the School District's suit against Snyder, it alleged that Snyder had failed to perform properly maintenance on the School District's boilers, thereby, damaging the boilers. During the pendency of the declaratory judgment action, judgment was entered in Snyder's favor in the suit by the School District, and, thus, the indemnification issue was moot. The declaratory judgment action then proceeded only on the duty to defend.

Following a non-jury trial, the lower court concluded that PMA owed Snyder a duty to defend under the terms of their insurance contract and ordered PMA to pay Snyder's defense costs of $ 40,290.51. PMA's post-trial motions were denied, and this appeal followed.

Herein, PMA complains: 1) The trial court erred as a matter of law in finding that a letter from Snyder's counsel to PMA consti-

---

7. Having determined that the trial court's order must be reversed, we need not review PMA's final issue on appeal that concerns alleged evidentiary errors made by the trial court.

tuted competent evidence of the scope of Snyder's work on the School District's boilers and, therefore, the trial court's findings of fact number four and number twenty are not based on competent evidence; 2) The trial court erred as a matter of law in holding that the School District's damages were caused by an "occurrence" under PMA's insurance policy; and 3) The lower court erred as a matter of law in holding that Snyder's claim was not excluded under policy exclusions (j)(6), (*l*) and (m).

When reviewing the results of a bench trial, we are bound by the trial court's findings of fact, unless those findings are not based on competent evidence. *Thatcher's Drug Store v. Consolidated*, 535 Pa. 469, 636 A.2d 156, 160 (1994). Absent an abuse of discretion, we are bound by the lower court's assessment of credibility of the parties. *Id.*, 636 A.2d at 160. However, we are not bound by the lower court's conclusions of law, as it is our duty to determine whether the lower court properly applied the law to the facts. *Id.*, 636 A.2d at 160.

The record reveals the following facts as found by the lower court:

1. Snyder Heating Company, Inc. (Snyder) contracted with the Wallingford–Swarthmore School District (District) to perform boiler/burner summer maintenance service in the District buildings in the summers of 1988 and 1989.

2. The District claimed it sustained damages to the boilers as the result of Snyder's failure to correctly perform the summer maintenance.

3. The District filed suit against Snyder in January, 1991 alleging its negligence.

4. The damages alleged were to the refractory material in the boilers; material that Snyder did not work on as part of its contract.

5. The damage is alleged to have resulted from improperly adjusted boiler/burners during the heating season which exposed the refractory materials to heat beyond their tolerance requiring replacement.

6. At all times relevant to the District's suit and this declaratory judgment action, the Pennsylvania Manufacturers' Association Insurance Company (PMA) insured Snyder under a commercial package policy of insurance which extended commercial general liability coverage as well as products and completed operations coverage.

7. Snyder immediately informed PMA of the District's suit and forwarded them a copy of the third party complaint.

8. Under the products and completed operations coverage, PMA insured Snyder against claims for damages for all property damage occurring away from Snyder's premises arising out of Snyder's product or Snyder's work.

9. The insurance policy provides that PMA will pay those sums that Snyder becomes legally obligated to pay as damages because of property damage to which the insurance applies, and PMA has the duty to defend any law suit seeking those damages.

10. PMA disclaimed all coverage under its policy by letters dated February 19 and April 12, 1991, refusing to provide either a defense of indemnification. Snyder retained personal counsel to defend the district's suit.

11. Snyder commenced this declaratory judgment action seeking a declaration that PMA was obligated to defend and indemnify it.

12. The District's suit against Snyder proceeded to Arbitration after which a judgment was entered in favor of Snyder rendering the indemnification issue in this case moot. No appeal from the judgment was taken.

13. The only issue is whether PMA was obligated to defend Snyder and owes it the costs incurred in defense as well as the costs incurred in bringing this action.

14. Snyder incurred defense costs in both actions including attorneys fees, expert witness fees, expenses and interest to the date of this trial in the sum of $38,978.01. For services subsequent to this trial, counsel filed a supplementary billing, through December 14, 1994, in the amount of $1,312.50.

15. The total damages sought are $40,290.51.

16. PMA argues that the District's claim was not covered under the policy in force.

17. The coverage turns on whether the facts qualify as an "occurrence" as that term is defined in the PMA policy, and whether the damage sustained by the district qualifies as damage "to" Snyder's work.

18. Section I(1)(b) of the policy provides:

This insurance applies to 'bodily injury' and 'property damage' only if:

(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and

(2) The 'bodily injury' or 'property damage' occurs during the policy period.

In the definitions section of the policy at Section V(9), occurrence is defined as follows:

'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

19. Section I(2)(j)(6) provides that the insurance does not apply to:

(j) 'Property damage' to that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it. . . .

Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operation hazard'.

I,2(1) States that this insurance does not apply to:

'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'.

20. Snyder did not work on the refractory material and, therefore, the property damage was not to Snyder's work.

Findings of Fact, Conclusions of Law and Order, June 14, 1995, pp. 1–4.

In its complaint, the school district alleged that it had entered into two contracts with Snyder for "Boiler/Burner Service" for the school buildings in the district to be performed during the summers of 1988 and 1989. Copies of the contracts were attached to the complaint as Exhibits A and C. See, Complaint of School District, ¶¶ 5, 7. In its "Breach of Contract" count of the complaint, the school district then set forth Snyder's "negligent" acts and the damages resulting therefrom in paragraphs 10 and 11, as follows:

10. Snyder has breached the First Contract and the Second Contract (collectively, the "Contracts"), by virtue of its failure to perform its obligations thereunder, including, but not limited to, the following:

(a) Failure to seal and close the Boilers in accordance with the specifications thereof;

(b) Failure to properly test and inspect the Boilers and their components;

(c) Failure to timely inspect the Boilers and report noted deficiencies to the School District;

(d) Failure to install new hardware in the Boilers as needed for the proper operation thereof;

(e) Failure to start the Boilers in accordance with the specifications therefor;

(f) Failure to properly clean the Boilers and their components;

(g) Failure to properly secure Boiler doors and other components to prevent damage thereto; and

(h) Failure to otherwise perform its obligations under the Contracts.

11. Solely as a result to Snyder's breach of the Contracts, as aforesaid, the School District has suffered damages, including but not limited to, the cost of necessary repairs to the Boilers and replacement of Boiler components, in the amount of Forty–Six Thousand Nine Hundred and Thirty–Six Dollars ($46,936.00), as set forth in the invoice of the Gerngross Corporation for the performance of such re-

pair and replacement work (the "Repair Invoice"), a true and correct copy of which is attached hereto as Exhibit "E" and incorporated herein by reference, and other costs and expenses necessary to correct the damages caused to the Boilers by Snyder.

As stated in paragraph 10 of the School District's complaint, Exhibit E sets forth the aspects of the boilers which were actually damaged, including firebricks and other refractory materials.

Herein, PMA first claims that the lower court did not base its finding of fact number 4 and number 20 upon competent evidence. Specifically, PMA complains that the lower court erroneously based its conclusion on a letter from Snyder's attorney to PMA which alleged that the damage to the boiler was to parts of the School District's heating system upon which Snyder did not work. See, Exhibit P–4. For the purposes of this dissenting opinion, I will assume it was error for the court to consider the letter *for proof of the fact that Snyder did not work on the damaged property of the School District.*

Nevertheless, I note, as the following reveals, that the School District's complaint clearly indicates that there were damages to refractory materials. However, it is not clear from the complaint whether Snyder worked on the refractory materials as a part of performing its duties under its boiler service contracts. Likewise, it is unclear from the pleadings whether Snyder's allegedly negligent work on the boilers ultimately caused the damage to the refractory materials. *These ambiguities in the complaint are crucial to our resolution of this matter.*

Before addressing the remaining issues raised by PMA, I quote from *Aetna Casualty & Surety Co. v. Roe*, 437 Pa.Super. 414, 650 A.2d 94 (1994), wherein we set forth the applicable law to determine whether an insurer has a duty to defend:

An insurer's duty to defend is a distinct obligation, different from and broader than its duty to indemnify. *Britamco Underwriters v. Weiner, supra,* 431 Pa.Super. at 280, 636 A.2d at 651 (citations omitted); *D'Auria v. Zurich Insurance Co.*, 352 Pa.Super. 231, 233, 507 A.2d 857, 859

(1986) (citations omitted). An insured has purchased not only the insurer's duty to indemnify successful claims which fall within the policy's coverage, but also protection against those groundless, false, or fraudulent claims regardless of the insurer's ultimate liability to pay. *D'Auria v. Zurich Insurance Co., supra* at 234, 507 A.2d at 859 (citing *Zeitz v. Zurich General Accident & Liability Insurance Co.*, 165 Pa.Super. 295, 67 A.2d 742 (1949)). Not all claims asserted against an insured, however, activate the insurer's duty to defend. *Id.*

The insurer's obligation to defend is fixed solely by the allegations in the underlying complaints.[4] *Stidham v. Millvale Sportsmen's Club, supra,* 421 Pa.Super. at 564, 618 A.2d at 953; *Germantown Insurance Co. v. Martin, supra,* 407 Pa.Super. at 331, 595 A.2d at 1174; *Harford Mutual Insurance Co. v. Moorhead, supra,* 396 Pa.Super. at 238–39, 578 A.2d at 494–95; *United Services Auto. Assoc. v. Elitzky,* 358 Pa.Super. 362, 368, 517 A.2d 982, 985 (1986), *appeal denied,* 515 Pa. 600, 528 A.2d 957 (1987). "It is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend." *D'Auria v. Zurich Insurance Co., supra,* 352 Pa.Super. at 234, 507 A.2d at 859 (quoting *Springfield Township, et al. v. Indemnity Insurance Co. of North America*, 361 Pa. 461, 64 A.2d 761 (1949)). The duty to defend is limited to only those claims *covered by the policy. Id.* at 235, 507 A.2d at 859 (citations omitted). The insurer is obligated to defend if the factual allegations of the complaint on its face comprehend an injury which is actually or *potentially* within the scope of the policy. *American States Insurance Co. v. Maryland Casualty Co.*, 427 Pa.Super. 170, 183, 628 A.2d 880, 887 (1993) (citing, *inter alia, Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484 (1959); *Wilson v. Maryland Casualty Co.*, 377 Pa. 588, 105 A.2d 304 (1954); *Stidham v. Millvale Sportsmen's Club, supra,* 421 Pa.Super. at 564, 618 A.2d at 953).

Thus, the insurer owes a duty to defend if the complaint against the insured alleges facts which would bring the claim within the policy's coverage if they were true. It does not matter if in reality the facts are completely groundless, false, or fraudulent. It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend.

*D'Auria v. Zurich Insurance Co., supra,* 352 Pa.Super. at 235, 507 A.2d at 859.

Where a claim is potentially within the scope of an insurance policy, the insurer who refuses to defend at the outset does so at its own peril. *Stidham v. Millvale Sportsmen's Club, supra* (citing *Cadwallader v. New Amsterdam Casualty Co., supra.*). In *Stidham,* we stated that [a] declaratory judgment action, though not specifically required by law, might resolve at the outset the question of an insurer's duty to defend. *Id.* at 565, 618 A.2d at 954. The purpose of a declaratory judgment procedure is to furnish an expeditious remedy for the settlement of claims which indicate imminent and inevitable litigation and to provide practical help in settling controversies which could be determined more advantageously if settled promptly rather than at some future time when they would require adjudication. *Eureka Casualty Co. v. Henderson,* 371 Pa. 587, 592, 92 A.2d 551, 553 (1952) (citing the predecessor to 42 Pa.C.S.A. §§ 7531–7541). *See also Geisinger Clinic v. Di Cuccio,* 414 Pa.Super. 85, 104, 606 A.2d 509, 519 (1992), *appeal denied,* 536 Pa. 625, 637 A.2d 285 (1993) (purpose of awarding declaratory relief is to settle finally and make certain the legal status or rights of the parties); *Doe v. Johns–Manville Corp.,* 324 Pa.Super. 469, 473, 471 A.2d 1252, 1254 (1984) (declaratory judgments are judicial searchlights switched on at the behest of a litigant to illuminate an existing legal right, status or other relation).

*Aetna v. Roe,* 650 A.2d at 98–99 (footnote in original).

Further, in *Stidham, supra,* we specifically stated:

Where a claim is potentially within the scope of an insurance policy, the insurer who refuses to defend at the outset does so at its own peril. *Cadwallader v. New Amsterdam Casualty Co.,* 396 Pa. 582, 589, 152 A.2d 484, 488 (1959). The underlying complaint fixes the parameters of an insurer's obligation to defend its insured. *Harford Mutual Insurance Company v. Moorhead,* 396 Pa.Super. 234, 238–39, 578 A.2d 492, 494–95 (1990) (citations omitted); *Elitzky, supra* at 368, 517 A.2d 982 at 985. In the event that the complaint alleges a cause of action which may fall within the coverage of the policy, the insurer is obligated to defend. *Id. If coverage (indemnification) depends upon the existence or nonexistence of undetermined facts outside the complaint, until the claim is narrowed to one patently outside the policy coverage, the insurer has a duty to defend claims against its insured.* Germantown Insurance Company v. Martin, 407 Pa.Super. 326, 595 A.2d 1172 (1991); *United Services Auto. Ass'n. v. Elitzky,* 358 Pa.Super. 362, 517 A.2d 982 (1986); *C. Raymond Davis & Sons, Inc. v. .Liberty Mutual Ins. Co.,* 467 F.Supp. 17 (E.D.Pa.1979); *Lee v. Aetna Casualty and Surety Co.,* 81 F.Supp. 1008 (S.D.N.Y.1949), *aff'd,* 178 F.2d 750 (2nd Cir.1949).

*Stidham,* 618 A.2d at 945 (emphasis added).

Turning to PMA's allegation that the insurance policy does not cover the School District's claims against Snyder, PMA first asserts that the lower court erroneously determined that the property damage alleged by the school district was caused by an "occurrence." The section of the Commercial General Liability Coverage policy issued to Snyder by PMA which relates to insurance coverage for property damage, § I(1)(b), provides:

(b) This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence"

---

4. In *D'Auria v. Zurich Insurance Co., supra,* this Court stated, "The major difference between indemnity and duty to defend cases is that in the latter, the complaint is the sole guide to the facts." *Id.* at 236, 507 A.2d at 860.

that takes place in the "coverage territory;" and

(2) The 'bodily injury' or 'property damage' occurs during the policy period.

The issue is whether the property damage was caused by an "occurrence" which is defined in § V(9) of the policy, as follows:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

PMA argues that the allegations set forth in the School District's complaint do not constitute an "occurrence" because they simply allege negligence on the part of Snyder in its performance of the boiler maintenance contract. Here is where the conflict between panel decisions becomes apparent.

In the case of *Solcar v. PMA, Ins. Co.*, 414 Pa.Super. 110, 606 A.2d 522 (1991), we were presented with the question of whether PMA was obligated to defend and indemnify Solcar for its faulty work based upon a commercial general liability insurance policy substantial similar to the one *sub judice*. Therein, we stated that Solcar's "slipshod construction work ... was not an accident or occurrence, a prerequisite under the insurance contract for reimbursement. Solcar was negligent and nothing more." *Solcar*, 606 A.2d at 527. Further, we stated:

We are guided in our resolution of this issue by our Supreme Court's disposition of this same question. In an interpretation of identical language from an insurance contract, **the Supreme Court held that an occurrence does not encompass negligence.** *Gene v.(sic) Harvey Builders v. Pa. Mfrs. Ass'n*, 512 Pa. 420, 517 A.2d 910 (1986).

Solcar, 606 A.2d at 527 (emphasis added).

If *Solcar, supra,* is a correct interpretation of *Gene & Harvey Builders, supra,* then PMA is correct that the School District's complaint does not present any claims covered by the policy since, as PMA admits, the claims sounds in negligence. Thus, the holding of *Solcar, supra,* would require reversal of the lower court award, and further inquiry would be unnecessary. However, I reject the interpretation of *Gene & Harvey Build-*

*ers, supra,* set forth in *Solcar, supra,* for the following reasons.

In *Gene & Harvey Builders, supra,* homeowners Marion and Erna D'Augostines filed a complaint against Gene & Harvey Builders which alleged that Gene & Harvey Builders built their home on unstable ground (sinkholes which the builder had intentionally concealed). Further, the homeowners averred that the builders had performed the construction of their home in a negligent and unworkmanlike manner. The homeowners also alleged that their home was damaged by the intentional concealing of the condition of the land and the negligent construction of their home by Gene & Harvey Builders.

Gene & Harvey Builders alerted PMA, their general liability carrier, which, at first, undertook defense of the builder. Subsequently, however, PMA notified the insured that it was denying coverage and would no longer defend the insured. Gene & Harvey Builders filed a declaratory judgment to determine whether the claims were covered under its insurance policy. The lower court found in favor of Gene & Harvey Builders.

On appeal, Gene & Harvey Builders argued that the lower court correctly ruled that the claims against it were caused by "occurrences" and, therefore, covered under the policy. PMA, on the other hand, asserted that coverage should be denied on the basis of several exclusions similar to those raised herein.

In addressing those arguments, our Supreme Court stated:

The complaint alleges that the contractor performed negligently and in an unworkmanlike fashion, that he concealed the presence of sinkholes and filled them under the cover of darkness, and that he misrepresented the condition of the premises to the buyer-homeowners. All these claims are excluded from coverage either because they are not "occurrences," i.e. accidental events, or because they fall under either exclusion (n) or exclusion (o).

The alleged intentional concealing of the condition of the land or the alleged intentional misrepresentation are not "occurrences" under the policy, for an intentional

act is not an accident (and only accidents are covered).

The alleged negligence is also excluded from coverage because it clearly falls under both exclusions (n) and (o).

\* \* \*

Whether the contractor was negligent or whether he intentionally deceived the homeowners is not at issue in this case. He may or may not be so adjudicated at trial. What is at issue is whether the wrong alleged in the complaint is covered by the policy or whether it is excepted by an exclusion. *Because intentional conduct is not covered by the policy, and because the alleged negligent conduct whether it was actually negligent or notarises from the product and the work, it is clearly subject the exclusion (n) and (o).*

*Gene & Harvey Builders*, 517 A.2d at 913–14 (emphasis in original).

My reading of *Gene & Harvey Builders, supra,* does not uncover language of our Supreme Court which should be considered a holding that "an occurrence does not encompass negligence" as stated in *Solcar,* 606 A.2d at 527. Rather, our Supreme Court specifically held that intentional conduct cannot be an "occurrence," i.e., an accident. *Gene & Harvey Builders,* 517 A.2d at 913. And, our high court held that the alleged negligence was excluded from coverage because it clearly fell under policy exclusion (n) and (o). Logically, to render that decision, I submit that our Supreme Court had at least to assume that negligence could be an "occurrence." In other words, our Supreme Court resolved the threshold question of whether negligent acts are covered under the policy in the contractor's favor. Why else would the court have applied the policy exclusions to deny coverage, rather than simply stating the damages were not caused by an "occurrence?"

In fact, prior to *Solcar, supra,* we had specifically held that negligent acts *may be* an "occurrence" which require coverage under a general liability policy, and, therein, lies the conflict requiring *en banc* consider-

ation. In *Barber v. Harleysville Mut. Ins. Co.*, 304 Pa.Super. 355, 450 A.2d 718 (1982), a contractor sued to collect the balance due on his customer's account. In response, the customer filed an answer alleging his property had been damaged as a result of the contractor's negligence. Specifically, the customer alleged that the contractor had "breached the agreement by failing to perform, or improperly performing, certain work specified in the agreement," and demanded $30,000.00, plus interest in compensation. The contractor alerted his commercial general liability insurer who refused to defend the contractor on the grounds that the property damage was not caused by an "occurrence."

In addressing the question of whether the contractor's allegedly negligent work was an "occurrence," we stated:

... Since negligence frequently involves an accident, the occurrence of which was neither expected nor intended by the actor, Appellee's negligence would be an "occurrence" under the definition cited above. Appellee's failure to perform and/or his improper performance could easily have been both accidental and neither intended nor expected by Appellee.... Because the property damage resulted from Appellee's alleged failure to perform or improper performance, the claim could easily involve an accident that Appellee neither expected nor intended to have occurred. Since the counter claim "may be within the policy" in the instant case, Appellant must defend the counter claim in light of *Cadwallader*.

*Barber*, 450 A.2d at 720.

Thus, we have two panel decisions in direct conflict: *Barber, supra,* which holds that negligence may possibly be an "occurrence;" and *Solcar, supra,* which holds an "occurrence" does not encompass negligence.[1] Given the fact that *Gene & Harvey Builders, supra,* does not expressly hold that "occurrence" does not encompass negligence, I would reject the holding of *Solcar, supra,* to the extent that it conflicts with our prior decision in *Barber, supra.* While it is clear that an intentional act cannot be an occurrence, it remains a possibility, at least *when*

---

1. It should be noted that *Solcar, supra,* makes no mention of Barber, supra.

*the pleadings are vague,* that an allegation of damage by negligent performance could also encompass "an accident [which was] neither expected nor intended to have occurred." *Barber,* 450 A.2d at 720.

Turning to the question of whether the School District's claim against Snyder was covered by its insurance policy, upon review, I am convinced the claim was covered since the School District, like the customer in *Barber, supra,* alleged *generally* that Snyder's negligent performance of a contract caused damage to its property. PMA must remember that their obligation to defend is initially fixed *solely* by the allegations in the complaint. Given the vague nature of the original pleadings, I believe that Snyder meets the threshold question of whether there was *a possibility* that the damage was caused by an "occurrence" and, therefore, covered under the terms of the insurance policy issued by PMA. Significantly, the School District's complaint is extremely broad in its allegations of negligence and vague in its recitation of damages. Thus, it is possible that even if Snyder was negligent, its negligence was not the cause of the damage to the boilers, i.e., the damage was caused by an "occurrence" (accident). As made clear in *Aetna v. Roe, supra,* and *Stidham, supra,* it is *this possibility of coverage* which requires PMA to defend, and PMA's refusal was at "its own peril." *When the complaint is vague and the question of coverage is dependent upon undetermined facts, the insurer has a duty to defend the claim until it is narrowed to one which is patently outside the policy coverage. Stidham,* 618 A.2d at 945. Thus, I find that PMA had a duty to defend Snyder until it was able to conclude that the School District's claims were patently outside the policy coverage.

However, this does not end the inquiry. Whether Snyder's claim for defense costs could be rejected on other contractual grounds must be determined. To this end, PMA argues that even if "occurrence" does encompass negligence, Snyder's claim is not covered pursuant to policy exclusions (j)(6), (*l*) and (m). Accordingly, I will discuss the issue of whether these policy exclusions bar coverage.

Exclusion (j)(6) provides that the insurance policy does not apply to:

j. "Property damage" to:

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Based upon a review of the complaint, I conclude that this exclusion does not apply since it is not "patently" clear whether the School District claimed damage *only* to those parts of the boiler upon which Snyder worked. As previously stated, this ambiguity in the complaint caused the School District's claim to be potentially covered, and it is this potential for coverage which creates PMA's duty to defend. *See Stidham,* 618 A.2d at 945.

Exclusion (*l*) provides that the insurance policy does not apply to:

*l.* "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

The "products-completed operations hazard" is defined as follows:

"Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

Once again, I am convinced that is unclear from the face of the complaint whether this exclusion applies because the complaint does not indicate whether all of the damage claimed was to Snyder's work or product. Thus, PMA has a duty to defend because the damages were *potentially* with the scope of coverage, and, only after the possibility of coverage was excluded through discovery and/or a request for more specific pleading, could PMA withdraw from the defense. *Stidham,* supra.

Finally, exclusion (m) provides that the insurance policy does not apply to:

m. "Property damage" to "impaired property" or property that has not been injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

"Impaired property" is defined as follows:

"Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work;" or

b. Your fulfilling the terms of the contract or agreement.

PMA argues this section precludes coverage because the School District sued Snyder for breach of contract, and the majority agrees citing _Redevelopment Auth. of Cambria County v. International Ins. Co._, 454 Pa.Super. 374, 685 A.2d 581 (1996) (_en banc_), _allocatur denied_, 548 Pa. 649, 695 A.2d 787 (1997). However, I conclude that this exclusion does not apply for two reasons.

First, it is the substance of the allegation which governs the question of coverage, not the form (assumpsit or tort) of the action chosen by the plaintiff. In _Barber_, 450 A.2d at 720, this same argument was raised, and we held the exclusion of coverage for breach of contract set forth in the insurance policy did not apply where the action was actually a negligence action, despite the plaintiff's characterization of the cause of action as "breach of contract."

I recognize that this court, in _Redevelopment Authority_, 685 A.2d at 589–590, citing _Bash v. Bell Telephone Co._, 411 Pa.Super.

347, 601 A.2d 825 (1992), further focused the general test to determine whether a cause of action sounds in tort or contract. "To be construed as a tort action, the wrong ascribed to the defendant must be the gist of the action with the contract being collateral." _Id._, 685 A.2d at 590. However, given the nearly identical nature of this case to that of _Barber, supra,_ and the fact that _Barber, supra,_ has not been expressly overruled, I have chosen to follow that existing precedent.

Second, I agree with the majority conclusion that liability-coverage provisions, identical to that found herein, are generally found to refer only to liability sounding in tort, not in contract. _Redevelopment Authority_, 685 A.2d at 591. Also, I agree "[t]he purpose and intent of [Snyder's] insurance policy is to protect the insured from liability for essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking." _Id._, 685 A.2d at 589, citing, _inter alia, Phico Insurance Co. v. Presbyterian Medical Services Corp._, 444 Pa.Super. 221, 663 A.2d 753, 756–757 (1995). Further, like the plaintiff in _Redevelopment Authority, supra,_ Snyder should not be permitted to covert its general liability policy into a professional liability policy or performance bond.

All that said, however, I submit that the majority ignores the fact that an accident could have occurred during the performance of a contract, which was not the result of a breach of a party's duties imposed by the contract. In other words, I contend that the expansive allegations of negligent performance of the contract and the vague recitation of damages in the School District's complaint allowed for the possibility that an accident occurred during the performance of the contract which caused damage to property of the School District upon which Snyder did not work. As previously stated, I am convinced that an allegation of negligent performance of a contract could encompass "an accident [which was] neither expected nor intended to have occurred." _Barber_, 450 A.2d at 720. It is the possibility that the School District's claim is covered which triggers PMA's duty to defend Snyder.

I do not mean to suggest that PMA had a duty to defend Snyder throughout Snyder's litigation with the School District. Rather, PMA had a duty to defend until additional pleadings or discovery revealed the true nature of the School District's claim. *Stidham,* 618 A.2d at 945, citing *Germantown Insurance Co. v. Martin,* 407 Pa.Super. 326, 595 A.2d 1172 ("If coverage (indemnification) depends upon the existence or nonexistence of undetermined facts outside the complaint, until the claim is narrowed to one patently outside the policy coverage, the insurer has a duty to defend claims against its insured."). By failing to inquire further, I believe that PMA refused to defend *"at its own peril."* *Aetna v. Roe,* 650 A.2d at 99 (emphasis added), citing *Stidham, supra.*[2]

In sum, I am convinced that PMA was required to defend Snyder until such time as PMA was able to ascertain that the damages could not have resulted from an "occurrence" or that another exclusion to coverage applied. Unlike the majority, I do not believe that the complaint was sufficiently clear for PMA to determine that an accident could not have taken place during Snyder's performance of the contract which would possibly constitute a covered "occurrence" under the terms of the insurance policy. Thus, I would affirm the decision of the court below.

McEWEN, President Judge, joins in this Dissenting Opinion.

---

2. Further, it is once again unclear from the complaint whether the damage to the boilers could have been remedied by the repair of Snyder's product or work. Accordingly, PMA had a duty to defend until it was patently clear whether the exclusion applied. *Stidham, supra.*