**ERIE INSURANCE EXCHANGE**

v.

**ABBOTT FURNACE COMPANY and Innovative Magnetics, Inc.**

**Appeal of Abbott Furnace Company.**

Superior Court of Pennsylvania.

Argued Nov. 19, 2008.
Filed May 13, 2009.

Richard A. Lanzillo, Erie, for appellant.

Allan C. Molotsky, Philadelphia, for appellee.

BEFORE: BOWES, FREEDBERG, and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Abbott Furnace Company appeals from the December 27, 2007 judgment entered in favor of Appellee Erie Insurance Exchange. Upon review, we affirm.

¶ 2 The trial court stated the factual and procedural history as follows.

[Appellant] manufactures annealing furnaces in the United States of America. In 1999, [Appellant] entered into a contractual relationship with Innovative Magnetics, Inc. ("IMI") to provide such a furnace for IMI's operations. In October 2002, IMI filed a five-count Complaint against [Appellant] in the United States District Court for the District of New Jersey. Its legal theories included breach of contract, breach of warranty, breach of duty of good faith and fair dealing, fraud, and consumer fraud. IMI twice amended its Complaint, incorporating a sixth count sounding in negligence.[fn1] After each was filed, [Appellant] contacted [Appellee] to request defense and indemnification. [Appellee] denied all three requests, maintaining that none of IMI's claims triggered coverage.

[fn1] [Appellee] asserts that the negligence claim only appeared in the Second Amended Complaint and refers the [trial c]ourt to Exhibits "A" and "B." Upon reviewing those exhibits, the [trial c]ourt found that IMI did in fact include its negligence claim in the document that purports to be the Amended Complaint.

For purposes of this action, [ ] IMI's Second Amended Complaint ("IMI Complaint") was the relevant pleading.[fn2] IMI therein alleged that it was one of only three manufacturers located in the United States that produced highly sensitive metallic magnetic laminations used in the ground fault industry; that its process involved a high temperature treatment completed in a continuous annealing furnace; and that to ensure the laminations' required magnetic sensitivity, they were heated to extreme temperatures in a hydrogen atmosphere in a furnace purged with nitrogen on both ends to ensure the absence of oxygen during the heating process. IMI further alleged that dur-

ing an interview with [Appellant] regarding the design, manufacture, and installation of an annealing furnace, [Appellant's] representative averred that [Appellant] had designed, manufactured, and installed several similar furnaces for one of IMI's primary competitors and that the competitor of IMI had never experienced any problems with a furnace employing welded flanges and had advised that IMI would never see a leak. IMI later discovered that the furnace manufactured for its primary competitor—the same design recommended to IMI—had in fact contained design defects.

[fn2] For completion of the factual rendition the [trial c]ourt [ ] relate[d] the allegations as they appear[ed] in the Second Amended Complaint but [ ] addres[ed] all three Complaints in the legal discussion.

Relying in part upon [Appellant's] positive averments, IMI ordered a [furnace from Appellant], advising the company of its manufacturing process, its specific needs and intended use, and that it was a start-up operation. [Appellant] subsequently designed, built, and installed an annealing furnace at IMI's Trenton, New Jersey facility, and immediately upon commencing production in October 2000, IMI noticed that the furnace was not functioning properly and concluded that the furnace was receiving a delivery of "cold" hydrogen, thereby creating fluctuations in the cooling process and adversely affecting the laminations. According to IMI, [Appellant] agreed with that conclusion and undertook to redesign and reinstall the hydrogen delivery system, which action improved the existing design defect but still left IMI unable to produce a lamination satisfying its customers' specifications. When IMI later notified [Appel-

lant] that the problems resulted from oxygen leaks attributable to substandard welding performed during both the initial installation and the reinstallation, [Appellant] instructed IMI to secure a welder to repair the defects. Though it did precisely that, [ ] production ceased while another manufacturer removed and replaced the conveyor belt and the furnace's central cavity due to extreme oxidation caused by the oxygen leaks.

According to the IMI Complaint, IMI was finally able to produce adequate laminations in December 2001 but had already sustained damages that included:

a) the cost of repairing and partially replacing the furnace;

b) the cost of running the laminations through the furnace two times (before the hydrogen delivery system was designed) so that they would approach the required specifications;

c) the cost of the damaged laminations as a result of the defective furnace—*i.e.* certain laminations belonging to IMI were destroyed by the defective furnace and had to be discarded while certain of the laminations were damaged and had to be resold at lower prices.

d) discounts given to IMI customers due to quality problems caused by [Appellant];

e) unfilled orders due to the delays in setting up a properly functioning furnace;

f) cash flow problems, which made it difficult for IMI to purchase raw materials and fill orders; and

g) loss of market share and good will due to the delays and the delivery of the inferior products[; and]

h) [l]ost profits resulting from the defective furnace and damaged laminations.

IMI thereafter incorporated its prefatory factual allegations into Count VI and further averred that because it was retained to design, manufacture, and install a furnace for IMI, [Appellant] had a duty to apprise IMI of the furnace's design defects and/or not design a furnace possessing the same defects; that [Appellant's] conduct constituted a negligent breach of that duty; and that [Appellant] was thus liable to IMI for compensatory damages in negligence.

The underlying federal suit ended in a settlement requiring [Appellant] to compensate IMI in the amount of $450,000.00. Additionally, [Appellant] contends that it incurred attorney fees, expert witness fees, and related litigation expenses in excess of $787,000.00, some or all of which it was ultimately entitled to recover from Erie.

In its Declaratory Judgment Complaint ("[Appellee] Complaint"), [Appellee] summarized the aforementioned federal litigation and set forth the numbers and effective dates of the relevant policies issued to [Appellant]. In Count I, [Appellee] contended that coverage under its policies was triggered only in the event of an "occurrence," the elements of which it said were not pled in the IMI Complaint. Specifically, [Appellee] pled that the law precluded "artful pleadings" that merely attempted to recast as an alternative cause of action allegations that formed some other cause(s) of action. Because the only alleged damages claimed by IMI followed from the alleged breach of contract, no "occurrence" had been pled, continued [Appellee's] Complaint, and thus [Appellee's] policies were not triggered.

[Appellee] further pled in Count II that [Appellant's] claims for a defense and indemnity were foreclosed by the policies' exclusions, which purportedly addressed the types of injury alleged in

the IMI Complaint. [Appellee] thus asked the [trial c]ourt to declare that it had no duty to defend or indemnify [Appellant] with regard to any of IMI's Complaints or incorporated claims.

[Appellant] responded by denying all of [Appellee's] material allegations, contending that most constituted conclusions of law and/or characterizations of pleadings and policies that spoke for themselves. It additionally counterclaimed for declaratory judgment, again reiterating IMI's basic allegation, asserting that it had timely and properly notified [Appellee] concerning the claims against it, and maintaining that some or all of said allegations fell or potentially fell within the relevant policies. [Appellant] further alleged that all three of IMI's Complaints sufficiently pled an "occurrence" not excluded under the policies; that by refusing coverage, [Appellee] had forced it to obtain outside counsel and incur substantial expense; and that [Appellee's] actions constituted both breach of contract and breach of the duty of good faith and fair dealing. [Appellant] thus requested the following declarations; 1) that [Appellee] was bound to defend it on all of IMI's Complaints; b) that [Appellee] was obligated to indemnify it for the claims asserted in, and any liability arising from, all three Complaints; c) that [Appellee] was obligated to reimburse it for all expenses incurred defending against IMI's claims; and d) that [Appellee] must reimburse it for all expenses associated with this declaratory judgment action.

As indicated above, both parties filed motions for summary judgment on their respective claims. Each filed an extensive brief in support of its own and in opposition to the other's position and [the trial court] entertained oral arguments on September 19, 2007.

Trial court opinion, 12/27/07, at 1–4 (references to record omitted).

¶ 3 On December 27, 2007, the trial court granted Appellee's motion for summary judgment and denied Appellant's cross-motion for summary judgment. Appellant filed a timely notice of appeal to this Court. The trial court ordered Appellant to file a Pa.R.A.P.1925(b) statement of the errors complained of on appeal; it complied. In response, the trial court filed a Rule 1925(a) statement that referred this Court to the December 27, 2007 opinion.

¶ 4 Appellant presents three questions for our review:

1. Whether the trial court erred in entering summary judgment in favor of Appellee Erie Insurance Exchange and holding that [Appellee] had no duty to defend or indemnify [Appellant] Abbott Furnace Company in the lawsuit filed by Innovative Magnetics, Inc. ("IMI") against [Appellant] where IMI's complaint included allegations that an annealing furnace manufactured by [Appellant] actively malfunctioned and caused physical damage to, *inter alia,* IMI's tangible personal property other than the annealing furnace itself.

2. Whether the trial court misapplied *Kvaerner Metals v. Commercial Union Ins. Co.,* 589 Pa. 317, 908 A.2d 888 (2006) in holding that [Appellee] had no duty to defend and indemnify [Appellant] where IMI's complaint included allegations that [Appellant] negligently designed and manufactured an annealing furnace that actively malfunctioned and physically damaged or destroyed other personal property owned by IMI.

3. Whether the trial court erred in holding that the "gist of the action" doctrine precluded coverage under [Appellee's] policies where IMI's complaints included allegations that [Appellant] negligently designed and

manufactured an annealing furnace that actively malfunctioned and physically damaged or destroyed other personal property owned by IMI.

Appellant's brief, at 3.

Our review of the trial court's grant of summary judgment is plenary. Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions and affidavits and other materials show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. We must view the record in the light most favorable to the opposing party and resolve all doubts as to the existence of a genuine issue of material fact in favor of the nonmoving party. We will reverse the trial court's grant of summary judgment only upon an abuse of discretion or error of law.

*Murphy v. Duquesne Univ. of the Holy Ghost,* 745 A.2d 1228, 1232–33 (Pa.Super.1999) (citations omitted).

¶ 5 All three of Appellant's arguments relate to perceived errors in the trial court's finding that Appellee had no duty to defend or indemnify Appellant where IMI's complaint included allegations that the furnace manufactured by Appellant actively malfunctioned and caused physical damage to, *inter alia,* IMI's tangible personal property. Accordingly, we address Appellant's arguments contemporaneously.

¶ 6 The trial court relied upon *Kvaerner Metals Div. of Kvaerner United States, Inc. v. Commercial Union Ins. Co.,* 589 Pa. 317, 908 A.2d 888 (2006), for the proposition that a third party's complaint alleging only faulty workmanship and damage to the insured's work product does not trigger coverage under a standard commercial general liability policy. However, Appellant argues that in addition to the claims for faulty workmanship and damage to the insured's work product, IMI's second amended complaint included allegations that the furnace actively malfunctioned and caused damage to other IMI property, thereby triggering coverage under the provisions of a general liability policy. Accordingly, Appellant argues that the trial court erred in entering summary judgment in favor of Appellee.

¶ 7 It is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured. *Kvaerner Metals Div. of Kvaerner United States, Inc.,* at 330, 908 A.2d at 896 (citation omitted). A carrier's duty to defend and indemnify an insured in a suit brought by a third party depends upon a determination of whether the third party's complaint triggers coverage. *Id.,* at 330, 908 A.2d at 896 (citations omitted).

¶ 8 Appellant contends that IMI's second amended complaint alleged a negligence claim in addition to its claims of faulty workmanship and damage to the furnace. Specifically, Appellant stated that IMI alleged the defects in the furnace directly and proximately caused destruction of and damage to other personal property, *i.e.,* its laminations. Accordingly, Appellant argues that these claims fall within the coverage of the general liability policy because the furnace *actively malfunctioned* causing damage to IMI's personal property.[1] *See Ryan Homes v.*

---

1. Appellant references page five of IMI's second amended complaint where IMI listed the losses and costs incurred as a result of Appellant's material contract breaches. Specifically, IMI lists as a cost "the damaged laminations as a result of the defective furnace—*i.e.,* certain laminations belonging to IMI were destroyed by the defective furnace and had to be discarded, while certain of the laminations were damaged and had to be resold at lower prices." *See* IMI's second amended complaint, 5/19/03, at 5.

*Home Indem. Co.*, 436 Pa.Super. 342, 647 A.2d 939, 942 (1994) (General liability insurance policies are intended to provide coverage where the insured's product or work causes personal injury or damage to the person or property of another. Provisions of a general liability policy provide coverage if the insured's work or product actively malfunctions, causing injury to an individual or damage to another's property.) (citations and quotation marks omitted). However, *contractual* claims of poor workmanship do not constitute the active malfunction needed to establish coverage under a general liability policy. *See Kvaerner Metals Div. of Kvaerner United States, Inc.*, at 333, 908 A.2d at 898 (citation omitted) (emphasis added). Accordingly, we look to the language of IMI's second amended complaint to determine if it pleaded a negligence claim that alleged the furnace actively malfunctioned, directly and proximately causing destruction of and damage to IMI's laminations.

¶ 9 IMI's second amended complaint indicated that certain laminations belonging to the company were destroyed by the defective furnace and had to be discarded while other laminations were damaged and had to be resold at lower prices. *See* IMI's second amended complaint, 5/19/2003, at 5. Additionally, in Count VI of its complaint, IMI averred the following.

56. IMI repeats and realleges the allegations contained in ¶¶ 1 through 55 of the [Second] Amended Complaint as if set forth at length herein.

57. Due to the fact that [Appellant] was retained to design, manufacture and install a furnace at IMI's manufacturing facility, [Appellant] had a duty to IMI to apprise IMI of the design defects experienced by IMI's competitor or, at least, to not design the furnace in the identical or similarly defective manner.

58. The foregoing conduct on the part of [Appellant] constitutes a negligent breach of its duty owed to IMI.

59. By reason of the foregoing, [Appellant] is liable to IMI for compensatory damages in negligence.

*Id.*, at 9.

■■■ ¶ 10 In making a determination of whether a negligence claim was pleaded in this instance, we are guided by the following principles. When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort. *Pa. Mfrs.' Ass'n Ins. Co. v. L.B. Smith, Inc.*, 831 A.2d 1178, 1182 (Pa.Super.2003) (citation and quotation marks omitted). The test is not limited to discrete instances of conduct; rather, the test is, by its own terms, concerned with the nature of the action as a whole. *Id.*, 831 A.2d at 1182 (citation and quotation marks omitted). The critical conceptual distinction between a breach of contract claim and a tort claim is that the former arises out of "breaches of duties imposed by mutual consensus agreements between particular individuals," while the latter arises out of "breaches of duties imposed by law as a matter of social policy." *See Reardon v. Allegheny College*, 926 A.2d 477, 486–87 (Pa.Super.2007) (citations omitted). As a practical matter, the doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims. *Pa. Mfrs.' Ass'n Ins. Co.*, 831 A.2d at 1182 (citations omitted); *see also Reardon*, 926 A.2d at 486 (gist of action doctrine forecloses tort claims arising solely from contractual relationship between parties; when alleged duties breached were grounded in contract itself; where any liability stems from contract; and when

tort claim essentially duplicates breach of contract claim or where success of tort claim is dependent on success of breach of contract claim).

¶ 11 Although IMI did reference Appellant's negligence in Count VI of its second amended complaint, we find, as did the trial court, that a negligence claim was not adequately pleaded in this instance. *See Reardon*, 926 A.2d at 486 (It is axiomatic that a plaintiff must establish he or she was owed a duty of care by the defendant, the defendant breached this duty, and this breach resulted in injury and actual loss in order to successfully prove negligence.) (citation omitted). IMI's claim that Appellant had a duty to apprise IMI of the design defects experienced by IMI's competitor or, at least, had a duty to not design the furnace in the identical or similarly defective manner arose from the mutual agreement between the parties regarding the specific requested purpose and design of the furnace. Specifically, before ordering a furnace from Appellant, IMI advised Appellant of its specific needs and intended use. The damage to IMI's laminations resulted from Appellant's contractual breach in failing to design the furnace in accordance with IMI's requested needs and intended use. This is not a situation in which the tortious conduct was the "gist" of the action and the contract was merely collateral to the conduct. *See eToll, Inc. v. Elias/Savion Adver.*, 811 A.2d 10, 14 (Pa.Super.2002) (citations omitted). Accordingly, the claim should be limited to a contract claim because the parties' obligations are defined by the terms of the contract, and not by the larger social policies embodied by the law of torts. *Id.*, 811 A.2d at 14 (citations omitted).

¶ 12 In conclusion, we find no error by the trial court in its determination that the gist of the action doctrine precluded coverage under Appellee's policies because IMI's allegation that Appellant had a duty to apprise IMI of the design defects or, at least, had a duty to not design the furnace in the identical or similarly defective manner arose from the terms of the contract and not from the larger social policies embodied by the law of torts. As Appellant has demonstrated no genuine issue of material fact, and Appellee is entitled to judgment as a matter of law, we affirm the trial court's grant of Appellee's motion for summary judgment and the denial of Appellant's cross-motion for summary judgment. *Murphy*, 745 A.2d at 1232–33 (citations omitted).

¶ 13 Judgment affirmed.