PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 08-2353

———

DOUGLAS A. JONES; ANDREA M. JONES,
individually and on behalf of all those similarly situated,
                                            Appellants
                    v.

ABN AMRO MORTGAGE GROUP, INC.;
CHASE HOME FINANCE, LLC; CITIMORTGAGE, INC.;
CITICORP HOME MORTGAGE SERVICES, INC.;
COUNTRYWIDE HOME LOANS, INC.;
FIFTH THIRD MORTGAGE COMPANY;
FLORIDA CAPITAL BANK, N.A.;
GMAC MORTGAGE CORPORATION;
HSBC MORTGAGE CORPORATION (USA);
*FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver for IndyMac Bank, F.S.B;
MOREQUITY INC.; NATIONAL CITY MORTGAGE INC.;
FIRST COVENANT, f/k/a nBank, NA; PROVIDENT
FUNDING GROUP, INC.;
THE PROVIDENT BANK;
SAXON MORTGAGE SERVICES, INC.;
SOVEREIGN BANK; SUNTRUST MORTGAGE, INC;
U.S. BANK N.A.;
WACHOVIA MORTGAGE CORPORATION;
**FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver for Washington Mutual Bank;
WELLS FARGO HOME MORTGAGE, INC.;
JOHN DOE MORTGAGE COMPANIES

*(Amended per Clerk's Order dated 9/9/08)
**(Amended per Clerk's Order dated 12/22/08)

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-07-cv-04328)
District Judge: Honorable James T. Giles

————

Argued February 12, 2010

Before: SLOVITER, ROTH, and TASHIMA,[*] <u>Circuit Judges</u>

(Filed: May 25, 2010)

————

Francis J. Farina
Devon, PA l9333

Timothy M. Fraser
Ellen Meriwether  (Argued)
Michael J. Willner
Cafferty Faucher LLP
Philadelphia, PA l9l03

Joseph A. O'Keefe
O'Keefe & Sher, P.C.
Kutztown, PA l9530

        Attorneys for Appellants

Martin C. Bryce, Jr.  (Argued)
Alan S. Kaplinsky
Ballard Spahr Andrews & Ingersoll LLP
Philadelphia, PA l9l03

Thomas M. Hefferon
Joseph F. Yenouskas

_____

[*]Honorable A. Wallace Tashima, Senior Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

2

Goodwin Procter LLP
Washington, DC 20001

Mark A. Aronchick
Joseph A. Dworetzky
John S. Stapleton
Hangley, Aronchick, Segal & Pudlin
Philadelphia, PA l9l03

Daniel T. Brier
John B. Dempsey
Myers, Brier & Kelly LLP
Scranton, PA l8503

Steven J. Adams
Stevens & Lee
Reading, PA 19603

Bonnie R. Golub
Susan Verbonitz
Weir & Partners LLP
Philadelphia, PA l9l07

Robert L. Hodges
McGuire Woods
Richmond, VA 23219

Jeffrey A. Lamken
MoloLamken LLP
Washington, DC 20037

David A. Super
Kirk K. VanTine
Baker Botts
Washington, DC 20004

Amy C. Purcell
Scott L. Vernick
Fox Rothschild LLP
Philadelphia, PA 19103

Attorneys for Appellees

⸻

OPINION OF THE COURT

⸻

SLOVITER, *Circuit Judge*.

Douglas and Andrea Jones (the "Joneses") filed suit against, inter alia, Appellees SunTrust Mortgage, Inc. ("SunTrust"), and Countrywide Home Loans, Inc. ("Countrywide"), who were the "lenders" that provided mortgage loans to the Joneses. In their Second Amended Complaint, the Joneses asserted claims for a declaratory judgment, negligence, and violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605. At the heart of the issue before us is a mortgage loan-servicing Ponzi scheme. Of particular interest is whether the perpetrator of the Ponzi scheme can be considered a loan "servicer" under RESPA. The District Court dismissed the Joneses' Second Amended Complaint. We will affirm.

**I.**

In 2002, Wesley Snyder ("Snyder"), a mortgage broker, spoke with the Joneses about refinancing the mortgage on their home through one of his companies (the "Snyder Entities"). Snyder offered the Joneses an integrated "Equity Slide Down Mortgage" product. In order to refinance with the "Equity Slide Down Mortgage" product, the Joneses signed two sets of documents at two different closings. The first set of documents consisted of a mortgage and note between the Joneses and SunTrust (the "SunTrust Mortgage"), a traditional mortgage lender. The SunTrust Mortgage was legitimate and provided the requisite funds for the mortgage. There was no reference in the documents relating to the SunTrust Mortgage to Snyder's product, the Equity Slide Down Mortgage.

Six days after the Joneses completed the transaction with SunTrust, Snyder presented the Joneses with the second set of

4

documents which consisted of a purported "mortgage" and "note" between the Joneses and the Snyder Entities. This transaction purported to "convert" the terms of the SunTrust Mortgage to a lower interest rate and lower monthly payments. The Snyder Entities offered the lower interest rate if the Joneses "pre-paid a large portion of the principal balance" to the Snyder Entities. App. at 8. SunTrust, however, was not a party to this transaction and signed none of the documents.

The Joneses made the large cash prepayment that Snyder requested. As a result, the interest rate and monthly payments on the "Equity Slide Down Mortgage" product were lower than those required under the SunTrust Mortgage. The Joneses' obligations to SunTrust, however, remained unchanged. *See* App. at 1351. Indeed, the document the Joneses signed with SunTrust provides "If I make a partial Prepayment, there will be no changes in . . . the amount of my monthly payment unless [SunTrust] agrees in writing to those changes." App. at 839. However, the documents the Joneses signed with the Synder Entities did make changes. Significantly, as the complaint states, the Snyder Entities "dictate[d] that all monthly payments were to be remitted to them," App. at 422, and, at the Snyder Entities' request, the Joneses signed a change-of-address form instructing SunTrust to direct all future correspondence to the Snyder Entities. This effectively forestalled communication between the Joneses and SunTrust.

Meanwhile, the Snyder Entities remitted to SunTrust the full monthly payments due on the Joneses' SunTrust Mortgage. According to the Joneses' counsel, the Snyder Entities did so by using the funds accumulated by the large prepayments to make up for the shortfall in what the Joneses were paying monthly under the "Equity Slide Down Mortgage" product. In 2005, the Joneses completed a similar transaction with the Snyder Entities on another property, the financing for which was provided by nBank. The related mortgage was later assigned to Countrywide.

Unbeknown to the Joneses, the "Equity Slide Down Mortgage" product was "bogus"; the Snyder Entities created the

product as a deception. App. at 505 ¶ 142. The only mortgage loans were with SunTrust and Countrywide. In 2007, the scheme collapsed and the Snyder Entities declared bankruptcy, at which time the Joneses learned that SunTrust and Countrywide held their mortgages. Once the Snyder Entities stopped making payments on the Joneses' mortgages to SunTrust and Countrywide, those banks demanded from the Joneses the monthly payments due on their mortgages. As noted above, the Snyder Entities had been making those payments by using, in part, the large prepayments of principal from the Joneses and other victims that Snyder had "pocket[ed]." App. at 1270. Snyder was indicted and ultimately pled guilty to mail fraud in connection with the scheme, which affected hundreds of mortgage loans. He was sentenced to 146 months in prison.

In September 2007, the Joneses filed a putative class action against SunTrust, Countrywide, and other lenders (collectively, the "Lenders") alleging negligence and fraudulent misrepresentation. The Joneses then filed an Amended Complaint that abandoned the fraudulent misrepresentation claim and asserted negligence and violations of RESPA, and sought a declaratory judgment, on the theory that the Snyder Entities were the Lenders' loan "servicer." The Joneses filed a Second Amended Complaint adding a defendant and "provid[ing] related clarifications." App. at 482. SunTrust and Countrywide, along with other named Lenders, moved to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

The District Court granted the Lenders' motion to dismiss and denied the Joneses' request for leave to amend, finding that further amendment would be "futile and inequitable" because there is "no indication that repleading would correct the defects in their claims." App. at 23. The putative class was never certified. The Joneses brought this appeal.[1]

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1332(d)(2). We have jurisdiction under 28 U.S.C. § 1291.

## II.

We exercise plenary review of the District Court's order granting a motion to dismiss for failure to state a claim. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009). We must accept all factual allegations as true, construe the Second Amended Complaint in the light most favorable to the Joneses, and determine whether, under any reasonable reading of the Second Amended Complaint, the Joneses may be entitled to relief. *See id.* "At this stage, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotations omitted)). We review the District Court's decision not to grant leave to amend for abuse of discretion. *See Winer Family Trust v. Queen*, 503 F.3d 319, 325 (3d Cir. 2007).

## III.

The Joneses allege that under Pennsylvania law, the Lenders "had the continuing duty to take reasonable steps to supervise the Snyder Entities to ensure that all payments and pre-payments of principal and interest were properly credited against the mortgage loans . . . ." App. at 504 ¶ 136. The Joneses assert that the Lenders breached that duty, styling it as a negligence claim. The District Court dismissed the claim under the "gist of the action" doctrine. Under Pennsylvania law, the "gist of the action" doctrine "precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." *Erie Ins. Exch. v. Abbott Furnace Co.*, 972 A.2d 1232, 1238 (Pa. Super. Ct. 2009) (citations omitted). "The critical conceptual distinction between a breach of contract claim and a tort claim is that the former arises out of 'breaches of duties imposed by mutual consensus agreements between particular individuals,' while the latter arises out of 'breaches of duties imposed by law as a matter of social policy.'" *Id.* (quoting *Reardon v. Allegheny Coll.*, 926 A.2d 477, 486-87 (Pa. Super. Ct. 2007)).

7

Here, the Joneses' negligence claim is based on the Snyder Entities' failure to properly credit the Joneses' payments against the mortgages.  This duty to properly credit the Joneses' payments was a contractual duty arising from the Joneses' contracts with the Snyder Entities, SunTrust, and Countrywide.  Under these contracts, the Joneses had a contractual duty to make payments under the mortgages.  In turn, the Snyder Entities, SunTrust, and Countrywide had the duty to properly credit those payments.  Any purported "duty to monitor and supervise the Snyder Entities," Appellants' Br. at 44, as the alleged servicing agents for SunTrust and Countrywide, cannot be divorced from these contractual duties to credit payments under the mortgage.  *See, e.g.*, *Strausser v. PRAMCO, III*, 944 A.2d 761, 768 (Pa. Super. Ct. 2008) (affirming dismissal of tort claims under "gist of the action" doctrine where torts claims were "directly related to the underlying contractual rights . . . of the parties as defined by the loan agreements and mortgages between them . . . .").  Because the duty here was imposed by contract rather than "by law as a matter of social policy," *Reardon*, 926 A.2d at 487 (citations and quotations omitted), the Joneses' negligence claim was properly dismissed.

The Joneses next allege that the Lenders failed properly to credit the payments the Joneses made to the Snyder Entities and, in doing so, violated the notice and reporting requirements of loan "servicers" under RESPA, a consumer protection statute that regulates the real estate settlement process.  12 U.S.C. § 2605.  The District Court held that the Joneses failed to state a claim under RESPA because the underlying loan documents demonstrate that the Snyder Entities were not loan "servicers."  The Joneses challenge the District Court's reliance on the loan documents and its conclusion that the Snyder Entities were not loan "servicers."

A loan "servicer" under RESPA is "the person responsible for servicing of a loan . . . ."  12 U.S.C. § 2605(i)(2).  The term "servicing" is defined to mean "receiving any scheduled periodic payments from a borrower *pursuant to the terms of any loan* . . . and making the payments of principal and interest and such other payments with respect to the amounts

8

received from the borrower as *may be required pursuant to the terms of the loan*." 12 U.S.C. § 2605(i)(3) (emphasis added). The Joneses argue that because RESPA refers to servicing "in the practical sense of receiving payments from the borrower and making payments of principal and interest," Appellants' Br. at 37, the Snyder Entities were servicers because they received payments from the Joneses and made payments to SunTrust and Countrywide. This argument neglects significant language from the statute that defines servicing in terms of receipt of scheduled periodic payments from the borrower "pursuant to the terms of any loan" and of making those payments "as may be required pursuant to the terms of the loan." *See* 12 U.S.C. § 2605(i)(3). Although the Joneses made payments to the Snyder Entities "pursuant to the terms of" the Equity Slide Down Mortgage products, those payments were, by definition, not made "pursuant to the terms of" the Mortgages with SunTrust or Countrywide. *Id.* It is undisputed that the Joneses' Equity Slide Down Mortgage products had their own loan documents and closings independent of the mortgages with the Lenders. The Joneses were making lesser payments pursuant to the "bogus" Equity Slide Down Mortgage products, not pursuant to the terms of the legitimate mortgages with SunTrust and Countrywide. The payments made by the Snyder Entities to SunTrust and Countrywide included funds that they had accumulated from the prepayments of principal, thereby perpetuating the criminal Ponzi scheme. It follows that the conduct of the Snyder Entities in collecting payments on the Equity Slide Down Mortgage products did not render the Snyder Entities "servicers" of the Lenders' mortgage loans.

Moreover, the Snyder Entities were not "servicers" because they were not "responsible for . . . making the payments of principal and interest" received from the Joneses "as may be required pursuant to the terms of the [Lenders'] loan." 12 U.S.C. § 2605(i)(2)-(3). The actual loan documents with SunTrust and Countrywide explicitly state that payments were to

9

be made to SunTrust and Countrywide.[2]  Although the Snyder Entities remitted the monthly amounts due from the Joneses to SunTrust and Countrywide, the District Court stated that the Joneses did not attach any amended loan documents that reassigned that responsibility to the Snyder Entities.  Under the circumstances, the allegation that the Snyder Entities were "servicers" under RESPA of the Lenders' loans is not persuasive.

The Joneses also argue, in the alternative, that SunTrust and Countrywide are liable under common law agency principles, but they point to no action by those Lenders suggesting any such relationship with the Snyder Entities.  We therefore find the Joneses alternative argument unavailing.[3]  We

_____

[2] It was not error for the District Court to consider the loan documents.  The documents were attached to the Lenders' motion to dismiss, and the Joneses referenced them in the Second Amended Complaint. Their authenticity was undisputed.  *See Miller v. Clinton County*, 544 F.3d 542, 550 (3d Cir. 2008) (noting that a "court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiffs [sic] claims are based on the document") (citation and internal quotation omitted).

[3] In support of their agency contentions, the Joneses directed us at oral argument to a form letter in which SunTrust makes lending disclosures and refers to the Snyder Entities as "a potential lender." App. at 1359.  We note that the letter is addressed to Jerry Getz, Jr., and Tamara Fisher, not the Joneses.  The Joneses' counsel stated at a hearing in the District Court that they "can't find [any similar letter] in [the Joneses'] file." App. at 1292.  Assuming the Joneses received such a letter, it does not state that the Snyder Entities were agents of SunTrust.  Moreover, there is no dispute that "this kind of letter preceded the closing on the [SunTrust] mortgage." App. at 1292.  The documents associated with the SunTrust Mortgage (and signed by the Joneses) make no mention of the Snyder Entities and state that the Joneses were to make payments to SunTrust.  The Joneses could not have reasonably inferred an agency relationship from SunTrust's earlier form letter.

hold that the language of RESPA defining a servicer is controlling,[4] and agree with the District Court's similar interpretation of the language.

The only remaining issue is whether the District Court abused its discretion in denying the Joneses' request for leave to amend the complaint. The Joneses did not submit a proposed Third Amended Complaint and did not otherwise explain to the District Court how they would plead any differently. The District Court held that additional amendment would be "both futile and inequitable" because there was "no indication" that repleading would correct the defects. App. at 23. It was not an abuse of discretion to deny the generalized request given the District Court's reasoned examination of the Joneses' claims, which demonstrates their futility.[5] *See Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 256 n.14 (3d Cir. 2010).

## IV.

For the above-stated reasons, we will affirm the judgment of the District Court.

---

[4] We do not suggest that there may not be an instance in which the actions of the original lender clothe another with apparent authority as a "servicer." This is not such a case.

[5] Because the District Court properly dismissed the Joneses' substantive claims, the claim for a declaratory judgment was also properly dismissed. We need not reach the District Court's denial of the Joneses' motion to transfer the case to the Bankruptcy Court.

11