2019 PA Super 223

| | | |
|---|---|---|
| PENNSYLVANIA MANUFACTURERS INDEMNITY COMPANY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| POTTSTOWN INDUSTRIAL COMPLEX LP, THE PRIDE GROUP, INC. AND LIBERTY MUTUAL INSURANCE CO. APPEAL OF POTTSTOWN INDUSTRIAL COMPLEX, LP | : | No. 3489 EDA 2018 |

Appeal from the Order Entered November 5, 2018
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2017-09855

BEFORE: BENDER, P.J.E., GANTMAN, P.J.E., and COLINS*, J.

OPINION BY COLINS, J.:                    **FILED JULY 22, 2019**

This is an appeal from an order granting a declaratory judgment in favor of an insurer, Pennsylvania Manufacturers Indemnity Company (PMA), in a declaratory judgment action that PMA brought against its insured, Pottstown Industrial Complex LP (Insured). The trial court's order granted PMA's motion for judgment on the pleadings and issued a declaratory judgment that PMA has no obligation to defend or indemnify Insured with respect to an action brought against Insured by Insured's tenant, The Pride Group, Inc. (Pride Group), for water damage to Pride Group's inventory (the Underlying Action). For the reasons set forth below, we reverse.

The complaint in the Underlying Action alleges that the premises that Pride Group leased from Insured were flooded during rainstorms on four

_____
* Retired Senior Judge assigned to the Superior Court.

occasions between July 2013 and June 2016 and that these floods damaged and rendered worthless over $700,000 in inventory that Pride Group stored on the premises. Pride Group Second Amended Complaint ¶¶16-20, 39-43, 61, 65, 67, 70. The first of these floods occurred on July 22, 2013, when "extensive amounts of rainwater infiltrated from the roof area and into the [p]remises, cascading across" and destroying inventory worth over $397,000; the other three floods occurred in 2015 and 2016. *Id.* ¶¶16-20, 39, 61, 67.

Pride Group alleges that the water entered the premises due to roof leaks, that Insured was responsible under the lease for keeping the roof "in serviceable condition and repair," and that the floods were caused by Insured's failure to properly maintain and repair the roof. Pride Group Second Amended Complaint ¶¶1, 7-8, 15-16, 23-34, 39, 44-48, 53-54, 57, 60-63, 66-69, 74-75 & Ex. A at 18 ¶14(a). Pride Group pleads these claims as a single cause of action for breach of contract. *Id.* ¶¶1, 71-77. The complaint, however, also specifically pleads that Insured was negligent in its maintenance of and repairs to the roof. *Id.* ¶¶1, 14-15, 74-75. The conditions of the roof that Pride Group alleges contributed to the floods include poor caulking of the roof, gaps and separations in the roofing membrane, undersized drain openings, and accumulated debris and clogged drains. *Id.* ¶¶30-31, 45-48 & Exs. F & I.

PMA provided commercial general liability (CGL) insurance coverage to Insured under CGL Policy No. 301201-03-93-89-2 (the PMA Policy). PMA

Declaratory Judgment Complaint ¶2 & Ex. 2; Insured's Answer ¶2. The PMA Policy provided coverage to Insured for the period November 1, 2012 to November 1, 2013, the time period in which the July 2013 flood of Pride Group's leased premises occurred. PMA Policy, Declarations at 1. PMA did not provide CGL coverage to Insured after November 1, 2013. Liberty Mutual Fire Insurance Company (Liberty Mutual) issued CGL insurance policies covering Insured for the periods November 1, 2013 to November 1, 2014, November 1, 2014 to November 1, 2015, and November 1, 2015 to November 1, 2016 (the Liberty Mutual Policies).

The PMA Policy provides coverage of $1 million per "occurrence" to Insured for bodily injury and property damage liability during the policy period, with an aggregate limit of liability of $2 million. PMA Policy, Declarations at 2. The PMA Policy states with respect to this coverage:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. ...
>             *         *         *
> b. **This insurance applies to "bodily injury" and "property damage" only if:**
> (1) **The "bodily injury" or "property damage" is caused by an "occurrence"** that takes place in the "coverage territory";
> (2) The "bodily injury" or "property damage" occurs during the policy period ....

*Id.*, CGL Coverage Form at 1 (emphasis added). The PMA Policy defines "property damage" and "occurrence" as follows:

- 3 -

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*        *        *

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

*Id.*, CGL Coverage Form at 14-15.

Pride Group served the Underlying Action on Insured on April 8, 2016. On April 12, 2016, Insured notified PMA of the Underlying Action and requested that PMA provide a defense and indemnity. On April 25, 2016, PMA sent Insured a letter advising Insured that it was defending Insured under a reservation of rights. PMA Declaratory Judgment Complaint, Ex. 3. On May 15, 2017, PMA filed the instant declaratory judgment action. PMA also named as defendants Pride Group and Liberty Mutual because their interests could be affected by the declaratory relief that it sought against Insured. On August 21, 2017, Liberty Mutual filed a counterclaim against Insured seeking a declaratory judgment that Insured is not entitled to coverage under the Liberty Mutual Policies. After the pleadings were closed, PMA filed a motion for judgment on the pleadings seeking a declaratory judgment that PMA has no obligation to defend or indemnify Insured on the ground that the Underlying Action does not allege an "occurrence."

On November 5, 2018, the trial court entered an order granting PMA's motion and the requested declaratory relief, holding that the allegations of inadequate roof repairs in the Underlying Action are claims for faulty workmanship and faulty workmanship does not constitute an "occurrence" under *Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Insurance Co.*, 908 A.2d 888 (Pa. 2006), and *Millers Capital Insurance Co. v. Gambone Brothers Development Co.*, 941 A.2d 706 (Pa. Super. 2007). Insured timely filed the instant appeal.[1]

Insured raises three issues for our review:

> Did the trial court err in extending *Kvaerner*'s "faulty workmanship" analysis in a matter of first impression to claims against a commercial landlord by its tenant for tenant personal property damage caused by the purported defective condition of the landlord's property?

---

[1] Liberty Mutual did not move for judgment on the pleadings on its counterclaim against Insured and the trial court's order did not dispose of that claim. The trial court's order is therefore not a final order under Pa.R.A.P. 341(b)(1). This appeal, however, is properly before this Court as an appealable interlocutory order under Pa.R.A.P. 311 because the trial court's order fully resolved PMA's claim for declaratory relief and the entire declaratory judgment dispute between PMA and Insured. Pa.R.A.P. 311(8) ("An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from … [a]n order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties"); 42 Pa.C.S. § 7532 (declaratory judgment "shall have the force and effect of a final judgment or decree"); *Pennsylvania Manufacturers' Association Insurance Co. v. Johnson Matthey, Inc.*, 188 A.3d 396, 399-400 (Pa. 2018); *Nationwide Mutual Insurance Co. v. Arnold*, ___ A.3d ___, ___ 2019 PA Super 213, *7-*8 (Nos. 1207, 1208 WDA 2018, filed July 11, 2019); *Tuscarora Wayne Insurance Co. v. Hebron, Inc.*, 197 A.3d 267, 270-71 (Pa. Super. 2018); *see also* Pa.R.A.P. 341 Note.

Did the trial court err in ruling that the Policy's exceptions to the contractual liability exclusions are "immaterial" to its determination of whether the Underlying Complaint constitutes an "occurrence" in contravention of well-established tenets of insurance law requiring that the Policy be viewed as whole, and read so that no provisions are superfluous?

Did the trial court err in holding that it did not need to defer determination for discovery into the party's competing interpretations of "occurrence" based upon the parties' course of performance, reasonable expectations, and evidence of trade usage?

Appellant's Brief at 7. We conclude that trial court erred in holding that PMA has no duty to defend or indemnify Insured under *Kvaerner* and *Gambone Brothers*. We therefore do not address Insured's second and third issues.

The interpretation of an insurance policy is a question of law. *Donegal Mutual Insurance Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007); *Kvaerner*, 908 A.2d at 897; *Gambone Brothers*, 941 A.2d at 712. Our review of the trial court's order holding that the PMA Policy does not provide Insured coverage with respect to the Underlying Action is therefore plenary and *de novo*. *American & Foreign Insurance Co. v. Jerry's Sport Center, Inc.*, 2 A.3d 526, 532-33 (Pa. 2010); *Baumhammers*, 938 A.2d at 290.

In determining whether an insurance policy provides coverage for a suit brought against the insured, a court must compare the terms of the insurance policy to the allegations of the complaint filed against the insured. *Jerry's Sport Center, Inc.*, 2 A.3d at 541; *Kvaerner*, 908 A.2d at 896; *Indalex Inc. v. National Union Fire Insurance Co. of Pittsburgh*, 83 A.3d 418, 421 (Pa. Super. 2013). Where the policy terms are clear and unambiguous,

the courts must give effect to the policy's language; policy terms that are ambiguous must be construed in favor of the insured. **Baumhammers**, 938 A.2d at 290; **Kvaerner**, 908 A.2d at 897; **Indalex**, 83 A.3d at 420-21; **Gambone Brothers**, 941 A.2d at 712.

The insurer's duty to defend is broader than its duty to indemnify. **Jerry's Sport Center, Inc.**, 2 A.3d at 540; **Kvaerner**, 908 A.2d at 896 n.7; **Penn-America Insurance Co. v. Peccadillos, Inc.**, 27 A.3d 259, 265 (Pa. Super. 2011). If a complaint against the insured pleads facts that are potentially within the scope of the policy's coverage, the insurer has a duty to defend the action until all covered claims are removed from the action. **Jerry's Sport Center, Inc.**, 2 A.3d at 541-42; **Indalex**, 83 A.3d at 421; **Peccadillos, Inc.**, 27 A.3d at 265. The complaint in the Underlying Action plainly asserts claims for property damage against Insured that occurred while the PMA Policy's coverage was in effect, as it seeks over $397,000 for damage to Pride Group's inventory in the July 2013 flood. The critical issue here is whether, under the allegations in that complaint, the property damage was "caused by an 'occurrence.'" PMA Policy, CGL Coverage Form at 1.

A claim for damages from the insured's improper performance of contractual obligations does not allege an "occurrence" where the only property damaged is the product or property that the insured supplied or on which it worked or where the damages sought are for the insured's failure to deliver the product or perform the service it contracted to provide. **Kvaerner**,

908 A.2d at 898-900; *Erie Insurance Exchange v. Abbott Furnace Co.*, 972 A.2d 1232, 1237-39 (Pa. Super. 2009); *Gambone Brothers*, 941 A.2d at 713-14; *Snyder Heating Co. v. Pennsylvania Manufacturers' Association Insurance Co.*, 715 A.2d 483, 486-87 (Pa. Super. 1998). Faulty workmanship itself does not constitute an "occurrence." *Kvaerner*, 908 A.2d at 900.

These precedents, however, do not hold that the fact that liability is based on failure to properly perform contractual duties precludes the existence of an "occurrence" where the claim is for damage to property not supplied by the insured and unrelated to what the insured contracted to provide. In *Kvaerner*, the underlying action alleged only damage to the coke oven battery that the insured built and sought as damages the cost of replacing the coke oven battery or the difference between the defective coke oven battery and what the insured had warranted that it would deliver. 908 A.2d at 891. The Court held that there was no allegation of an "occurrence" that could trigger CGL insurance coverage because the CGL policies defined "occurrence" as "an accident," and faulty workmanship that damaged only the work product that the defendant supplied does not constitute an accident. *Id.* at 897-900. The Court held that treating claims of faulty workmanship that damaged only the insured's work product itself as an "occurrence" would convert CGL insurance into a performance bond guaranteeing the insured's work. *Id.* at 899. The Court specifically noted that the purpose of the requirement of an

"occurrence" in CGL policies is to limit the risk insured to "the possibility that the goods, products or work of the insured, once relinquished and completed, will cause bodily injury or damage to property other than to the completed work itself and for which the insured [ma]y be found liable" and to exclude coverage "for economic loss because the product or completed work is not that for which the damaged person bargained." *Id.* at 899 n.10 (quoting Henderson, Insurance Protection for Products Liability and Completed Operations; What Every Lawyer Should Know, 50 Neb. L. Rev. 415, 441 (1971)).

*Gambone Brothers*, *Abbott Furnace*, and *Snyder Heating* likewise involved claims that the insured's faulty workmanship damaged the insured's product or the project on which the insured worked, not claims for damages to other property completely distinct from and unconnected to the insured's contract. In *Gambone Brothers*, this Court held that claims for water damage to houses that the insured had constructed did not allege an "occurrence" and were therefore not covered by its liability insurance policies. 941 A.2d at 708, 713-14. The Court held that the claims for damage to the houses were indistinguishable from the type of claim in *Kvaerner* because they alleged faulty workmanship and damage to the insured's products themselves, the houses. *Id.* at 713.

In *Abbott Furnace*, this Court held that there was no liability insurance coverage where the underlying complaint alleged that the furnace that the

insured supplied was inadequate and did not properly perform the manufacturing operation for which it was purchased and the purchaser sought to recover the cost of repairing and partially replacing the furnace. 972 A.2d at 1234-35, 1237-39. The only other property that the purchaser claimed was damaged consisted of product manufactured using the furnace, which was damaged by the furnace's inadequate performance; there was no claim of any leak, explosion, or other event causing damage to other property outside the furnace. *Id.*

In **Snyder Heating**, the underlying claims were that the insured had not properly performed its boiler maintenance contract and that the boilers were damaged as a result. 715 A.2d at 486. This Court held that those claims did not satisfy the requirement of an "occurrence" because the complaint simply alleged that the insured did not satisfy its contractual obligations and "fails to allege any active malfunctioning on Snyder's part." 715 A.2d at 487 (emphasis omitted). The Court explained:

> "General liability insurance policies are intended to provide coverage where the insured's product or work causes personal injury or damage to the person or property of another." ... These types of insurance policies involve risks that are limited in nature; they are not the equivalent of a performance bond on the part of the insurer.

*Id.* (quoting **Ryan Homes, Inc. v. Home Indemnity Co.**, 647 A.2d 939 (Pa. Super. 1994)) (citations omitted).

In contrast, where the underlying claims allege that the insured's faulty work caused personal injury or an event that damaged other property, this

- 10 -

Court has concluded that there was an "occurrence" and that the insurer had a duty to defend. *Indalex*, 83 A.3d at 425-46. In *Indalex*, the underlying actions alleged that the insureds supplied windows and doors that "were defectively designed or manufactured and resulted in water leakage that caused physical damage, such as mold and cracked walls, in addition to personal injury" and asserted claims based on strict tort liability, negligence, breach of warranty, and breach of contract. *Id.* at 419-20. This Court distinguished *Kvaerner* and *Gambone Brothers* on the ground that those cases involved coverage for damage to the product that the insured supplied, not personal injury or damage to other property, and held that because the underlying actions alleged "property loss, to property other than [the insureds'] products, and personal injury," the claims were for damages caused by an "occurrence." *Indalex*, 83 A.3d at 422-23, 426.

Here, the Underlying Action alleges damage to other property, Pride Group's inventory stored on the premises, caused by a distinct event, flooding, and seeks damages for the destruction of that other property, not for the cost of repairing or replacing the defective item that Insured supplied, the inadequate roof. The allegations in the Underlying Action are therefore comparable to those in *Indalex* and unlike *Kvaerner*, *Gambone Brothers*, and the other decisions rejecting coverage. Holding that such claims are covered by a CGL policy is consistent with the rationale of *Kvaerner* that the term "occurrence" must not be interpreted so broadly that it converts the

policy into a performance bond, as this construction does not provide coverage for loss of the value of the insured's performance. Rather, it construes the policy as providing insurance for a risk that CGL policies are intended to cover, damage that the insured causes to another person's property. **Kvaerner**, 908 A.2d at 899 n.10; **Snyder Heating**, 715 A.2d at 487.[2]

---

[2] PMA also relies on a number of federal cases interpreting Pennsylvania law. Most of these cases are plainly inapplicable here, as they involved only claims that the insured's inadequate performance of a contract resulted in damage to the item that it constructed or participated in constructing or claims that the insured's product failed to satisfy the buyer's contractual expectations, not claims that the insured damaged other unrelated property. **See Specialty Surfaces International, Inc. v. Continental Casualty Co.**, 609 F.3d 223, 227-28, 238-39 (3d Cir. 2010) (damage was to insured's work and work of other contractor on the project); **Lenick Construction, Inc. v. Selective Way Insurance Co.**, 737 Fed. Appx. 92, 93-95 (3d Cir. 2018) (claim was for damage to condominium units caused by insured's work in construction of the units); **Westfield Insurance Co. v. Bellevue Holding Co**., 856 F. Supp. 2d 683, 686-90, 701 (E.D. Pa. 2012) (damage was to houses constructed by the insured); **Roman Mosaic & Tile Co. v. Liberty Mutual Insurance Co.**, 2012 WL 1138587 at *1-*2 (E.D. Pa., No. 11-6004, Apr. 5, 2012) (damage was to condominium on which insured was a subcontractor); **Peerless Insurance Co. v. Brooks Systems Corp.**, 617 F.Supp.2d 348, 351 (E.D. Pa. 2008) (claim was for damage to equipment designed and constructed by insured); **Nationwide Mutual Insurance Co. v. CPB International, Inc.**, 562 F.3d 591, 594 (3d Cir. 2009) (component supplied by insured was unfit for use in buyer's product); **Atain Insurance Co. v. East Coast Business Fire, Inc.**, 2018 WL 637579 at *1 (E.D. Pa., No. 17-2545, Jan. 31, 2018) (claim was for failure of fire suppression system to perform, not for damage from event caused by insured's work or product). Moreover, none of the federal decisions is binding on this Court. **Bochetto v. Piper Aircraft Co.**, 94 A.3d 1044, 1050 (Pa. Super. 2014); **Mutual Benefit Insurance Co. v. Goschenhoppen Mutual Insurance Co.**, 572 A.2d 1275, 1278 (Pa. Super. 1990). To the extent that any of the federal decisions suggest that claims against an insured for damage to another's property that is unconnected to the insured's contract cannot arise out of an "occurrence" simply because the insured is alleged to have negligently performed a contractual obligation, we

Moreover, such coverage is not based on treating Insured's contractual performance as an "occurrence." Although Insured's liability is based on its performance of its duties under the lease, the "occurrence" that is alleged to have caused the property damage is a flood. As noted above, the PMA Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." PMA Policy, CGL Coverage Form at 14. An "accident," in turn, is "'[a]n unexpected and undesirable event,' or 'something that occurs unexpectedly or unintentionally.'" *Kvaerner*, 908 A.2d at 897-98. The flooding of a building with water "cascading" through the premises, Pride Group Second Amended Complaint ¶16, is an "unexpected and undesirable event" and therefore falls within the definition of the term "occurrence" under the PMA Policy.

The fact that the Underlying Action asserts only a breach of contract cause of action does not change our conclusion that it alleges an "occurrence" that is potentially within the scope of the PMA Policy's coverage. It is the factual allegations of the underlying complaint that determine whether the claims are within the coverage of an insurance policy, not the label of the cause of action selected by the underlying plaintiff. *Mutual Benefit Insurance Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999). The complaint in the Underlying Action pleads that Insured was negligent in its maintenance of

---

conclude that they are neither persuasive nor an accurate statement of Pennsylvania law.

and repairs to the roof. Pride Group Second Amended Complaint ¶¶1, 14-15, 74-75. PMA does not claim that those negligence allegations have been dismissed from the Underlying Action.

In addition, the PMA Policy does not exclude all otherwise-covered property damage claims simply because they are based on duties under a contract. A separate coverage in the PMA Policy for personal and advertising injury liability has an exclusion for "breach of contract" that excludes claims "arising out of a breach of contract." PMA Policy, CGL Coverage Form at 6. No such exclusion appears in the bodily injury and property damage liability coverage section of the PMA Policy. *Id.*, CGL Coverage Form at 2-6. Rather, the PMA Policy's only contract exclusion from its bodily injury or property damage coverage is limited to claims that "the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement," and provides that

> [t]his exclusion does not apply to liability for damages:
> (1) That the insured would have in the absence of the contract or agreement; or
> (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.
> …

*Id.*, CGL Coverage Form at 2. "Insured contract" is defined as including "[a] contract for a lease of premises." *Id.*, CGL Coverage Form at 13. Thus, even if this assumed liability exclusion were construed as applying to claims based

on the insured's own conduct,[3] it would be inapplicable here, as the contractual obligations alleged in the Underlying Action are under a lease.

Because the Underlying Action alleges damage to other property, not property that Insured contracted to provide, and that the damage was caused by an accident, a flood, it includes claims for property damage caused by an "occurrence." We therefore reverse the trial court's judgment that PMA has no duty to defend or indemnify Insured with respect to the Underlying Action.

Order reversed. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/22/19

---

[3] As PMA itself argues, it appears that this assumed liability exclusion has no applicability to claims, such as those here, based on the insured's own breach of duties assumed under a contract. **See Brooks v. Colton**, 760 A.2d 393, 395-96 (Pa. Super. 2000) (exclusion for assumption of liability in a contract applies to and excludes from coverage only liability based on indemnity agreements under which the insured assumes liability for damages caused by another party).